J-S38045-14

2014 PA Super 267

COMMONWEALTH OF PENNSYLVANIA,

Appellee

v.

JERMAL BIZZEL,

Appellant

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 2556 EDA 2013

Appeal from the Judgment of Sentence April 16, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011725-2012

BEFORE:  FORD ELLIOTT, P.J.E., BOWES, and SHOGAN, JJ.

CONCURRING OPINION BY BOWES, J.:        **FILED DECEMBER 02, 2014**

In light of this Court's decisions in ***Commonwealth v. Newman***, 99

A.3d 86 (Pa.Super. 2014) (*en banc*), and ***Commonwealth v. Valentine***,

2014 PA Super 220, I am constrained to concur with the learned majority's

severability analysis.  I write further to express my disagreement with

aspects of those decisions, especially in light of those Courts' discussions of

***Commonwealth v. Watley***, 81 A.3d 108 (Pa.Super. 2013) (*en banc*), a

decision I authored.[1]  In my view, those provisions of Pennsylvania

---

[1]  In this respect, I note that I am also in disagreement with the discussion
of my learned colleague Judge Mundy in her concurring and dissenting
opinion in ***Commonwealth v. Newman***, 99 A.3d 86 (Pa.Super. 2014) (*en
banc*), regarding ***Commonwealth v. Watley***, 81 A.3d 108 (Pa.Super.
2013) (*en banc*), and its implications on severability.  In ***Watley***, we found
the sentence therein legal since the jury determined the facts subjecting
*(Footnote Continued Next Page)*

mandatory minimum statutes affected by *Alleyne v. United States*, 133 S.Ct. 2151 (2013), are severable.[2]

In *Newman*, this Court found, in pertinent part, that 42 Pa.C.S. § 9712.1(c), governing a burden of proof and declaring that possession of a firearm was not an element of the underlying crime, was not severable from the remainder of § 9712.1. The *en banc* Court, in an opinion authored by my esteemed colleague on this panel, the learned President Judge Emeritus Ford Elliott, found that subsection (a) of § 9712.1 was essentially and

*(Footnote Continued)* _____

Watley to his increased sentence beyond a reasonable doubt. We did not discuss or reach the non-raised question of the unconstitutionality of the statute as a whole. Thus, I agree with my learned colleague President Judge Emeritus Ford Elliott's characterization of *Watley* in footnote 9 of her opinion in *Newman* to the limited extent that *Watley* did not address severability. Nevertheless, my sentiments on the ultimate question of severability are closer in line to those of Judge Mundy, and I believe *Watley* supports the idea that the mandatory statutes are not unconstitutional as a whole.

[2] I am cognizant that our Supreme Court is currently considering the severability issue. *See Commonwealth v. Newman*, 99 A.3d 86 (Pa.Super. 2014) (*en banc*) (collecting cases). Further, I am aware that the High Court is considering whether *Alleyne v. United States*, 133 S.Ct. 2151 (2013), implicates this Commonwealth's illegal sentencing doctrine. *Commonwealth v. Johnson*, 93 A.3d 806 (Pa. 2014). Unlike *Newman* and *Commonwealth v. Valentine*, 2014 PA Super 220, Appellant properly preserved his challenge to his mandatory minimum sentence at the trial level, anticipating the decision in *Alleyne*. Thus, there are no issue-preservation questions as in *Newman* and *Valentine*. Since Appellant properly preserved his *Alleyne* issue, a decision determining that certain *Alleyne* issues do not pertain to the legality of a sentence will have no effect on this case. Hence, this case presents a pure vehicle for the determination of whether 18 Pa.C.S. § 6317(b) is severable from the remainder of the statute following *Alleyne*.

inseparably connected to subsection (c). The **Newman** Court reasoned that submitting to the jury the question of whether the firearm was possessed in close proximity to the drugs therein would constitute impermissible legislating by the Court and result in the court impermissibly rewriting the mandatory statute.

Although I concede reasonable minds may disagree as to the issue, I am unpersuaded that the burden of proof aspects of the mandatory minimum statutes affected by **Alleyne** are not severable. It is long-standing law in this Commonwealth that, merely because a portion of a statute is unconstitutional, the entire statute is not *ipso facto* unconstitutional. **See Rothermel v. Meyerle**, 20 A. 583 (Pa. 1890). In **Rothermel**, our High Court opined,

> A statute may be void only so far as its provisions are repugnant to the constitution: one provision may be void, and this will not affect other provisions of the statute. If the part which is unconstitutional in its operation, is independent of, and readily separable from that which is constitutional, so that the latter may stand by itself, as the reasonable and proper expression of the legislative will, it may be sustained as such; but, if the part which is void is vital to the whole, or the other provisions are so dependent upon it, and so connected with it, that it may be presumed the legislature would not have passed one without the other, the whole statute is void: **Gibbons v. Ogden**, 9 Wheat. 203; **City of New York v. Miln**, 11 Pet. 102; **Packet Co. v. Keokuk**, 95 U.S. 80; **Tiernan v. Rinker**, 102 U.S. 123; **Presser v. Illinois**, 116 U.S. 252; **Lea v. Bumm**, 83 Pa. 237; **In re Ruan St.**, 132 Pa. 257; Sedg., St. & Const. Law, 413. The constitutional and the unconstitutional provisions may even be contained in the same section of the law, and yet be perfectly distinct and separable, so that the former may stand though the latter fall: the question is, whether the several provisions are essentially and inseparably connected in substance:

- 3 -

> *Hagerstown v. Dechert*,  32 Md. 369; 3 Amer. & Eng. Encyc.
> of Law, 677, and cases there cited.

*Rothermel*, *supra* at 587-588.  These principles hold true even where the statute in question does not contain a severability provision.  *Rieck-McKunkin Dairy Co. v. Milk Control Com.*, 18 A.2d 868 (Pa. 1941).  Our legislature codified this expression of American common law in 1 Pa.C.S. § 1925.  That statute provides:

> The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and incapable of being executed in accordance with the legislative intent.

1 Pa.C.S. § 1925; *see also Stilp v. Commonwealth*, 905 A.2d 918, 970-971 (Pa. 2006) (discussing briefly the history of the severability doctrine).

Thus, there is a presumption that Pennsylvania legislation is severable. "Severance is precluded only where, after the void provisions are excised, the remainder of the statute is incapable of execution in accordance with legislative intent." *Commonwealth v. Williams*, 832 A.2d 962, 986 (Pa. 2003).  Importantly, "Section 1925 funnels our inquiry to examining what the enacting legislature would have done had it known that the [provision  in

- 4 -

question] was unconstitutional." ***Annenberg v. Commonwealth***, 757 A.2d 338, 347 (Pa. 2000).

As our Supreme Court set forth in ***Stilp***, "The test of severability may be stated in simple terms as follows: After the invalid portion of the act has been stricken out, whether that which remains is self-sustaining and is capable of separate enforcement without regard to that portion of the statute which has been cast aside. If this be true the statute should be sustained to the extent of that which remains." ***Stilp***, ***supra*** at 972 n.38 (quoting ***Rutenberg v. City of Philadelphia***, 196 A. 73, 79 (Pa. 1938)).

Following ***Alleyne***, 18 Pa.C.S. § 6317(b) is unquestionably unconstitutional. That aspect of the statute reads:

> **(b) Proof at sentencing.--**The provisions of this section shall not be an element of the crime. Notice of the applicability of this section to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider evidence presented at trial, shall afford the Commonwealth and the defendant an opportunity to present necessary additional evidence and shall determine by a preponderance of the evidence if this section is applicable.

18 Pa.C.S. § 6317(b).

If that section were excised, the statute would read:

> **(a) General rule.--**A person 18 years of age or older who is convicted in any court of this Commonwealth of a violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64), [FN1] known as The Controlled Substance, Drug, Device and Cosmetic Act, shall, if the delivery or possession with intent to deliver of the controlled substance occurred within 1,000 feet

of the real property on which is located a public, private or parochial school or a college or university or within 250 feet of the real property on which is located a recreation center or playground or on a school bus, be sentenced to a minimum sentence of at least two years of total confinement, notwithstanding any other provision of this title, The Controlled Substance, Drug, Device and Cosmetic Act or other statute to the contrary. The maximum term of imprisonment shall be four years for any offense:

(1) subject to this section; and

(2) for which The Controlled Substance, Drug, Device and Cosmetic Act provides for a maximum term of imprisonment of less than four years.

If the sentencing court finds that the delivery or possession with intent to deliver was to an individual under 18 years of age, then this section shall not be applicable and the offense shall be subject to section 6314 (relating to sentencing and penalties for trafficking drugs to minors).

. . .

**(c) Authority of court in sentencing.--**There shall be no authority for a court to impose on a defendant to which this section is applicable a lesser sentence than provided for in subsection (a), to place the defendant on probation or to suspend sentence. Nothing in this section shall prevent the sentencing court from imposing a sentence greater than that provided in this section. Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory sentences provided in this section. Disposition under section 17 or 18 of The Controlled Substance, Drug, Device and Cosmetic Act shall not be available to a defendant to which this section applies.

**(d) Appeal by Commonwealth.--**If a sentencing court refuses to apply this section where applicable, the Commonwealth shall have the right to appellate review of the action of the sentencing court. The appellate court shall vacate the sentence and remand the case to the sentencing court for imposition of a sentence in accordance with this section if it finds that the sentence was imposed in violation of this section.

18 Pa.C.S. § 6317.

Reading the statute without the burden of proof provision does not, in my view, render it wholly incapable of enforcement. The statute remains both coherent and self-sustaining when read in conjunction with the constitutional jury requirements articulated in **Alleyne**. For example, in **Watley**, it was clear that the jury determined beyond a reasonable doubt the facts necessary to impose the mandatory sentence. Hence, no jury trial right issues were involved, nor was the sentence unconstitutionally increased. Similarly, in **Commonwealth v. Matteson**, 96 A.3d 1064 (Pa.Super. 2014), the jury verdict included the facts needed to impose the mandatory minimum sentence. Today, the legislature could readily reenact mandatory minimum statutes absent the burden of proof provisions and without specifying a new burden of proof procedure and there would be no constitutional impediment to their enforcement.

Respectfully, the **Newman** Court asked the wrong question in conducting its severability analysis. Specifically, it looked to whether the General Assembly intended to have a jury decide the sentencing factors that triggered the mandatory sentence. **See id**. at 102 ("the legislature also intended those penalties to be imposed according to a very specific procedure—the issue of firearm possession must be decided by the judge, at sentencing, by a preponderance of the evidence."). The proper query, however, is what the legislature would have done had it known that a judge could not decide such facts by a preponderance of the evidence standard.

*See Annenberg*, *supra* at 347; *see also United States v. Booker*, 543 U.S. 220, 246 (2005).

I simply cannot agree that the legislature would not have enacted a statute to mandatorily increase punishment based on the sale of drugs in a school zone solely because a judge could not determine the facts by a preponderance standard. Had the legislature known this burden of proof was unconstitutional, it is more likely that it would have substituted the constitutional standard in its place. The overriding concern of the legislature was to increase punishment for offenses committed in school zones and decrease judicial sentencing discretion. The mandatory minimum statute did not exist for the sole purpose of allowing judges to determine facts by a preponderance standard. Where the purpose of a statute is "to accomplish several distinct objects, and these can be severed, so that one may fall and the others stand, only the part which infringes the constitution will be declared invalid[.]" Thomas Raeburn White, *Commentaries on the Constitution of Pennsylvania*, at 29 (1907) (collecting cases).

Therefore, I believe the procedure adopted by the trial court in *Valentine*, which was ultimately rejected by this Court based on *Newman*, was entirely proper. Submitting to the jury the facts essential to invoke the mandatory is consistent with federal practice following the earlier *Apprendi v. New Jersey*, 530 U.S. 466 (2000) decision, and provides an easy and manageable constitutional method to follow. Further, I strongly disagree that such procedures result in courts re-writing the mandatory statute. I

acknowledge that "a court is empowered merely to strike existing language; the judiciary is given no authority to draft its own language and insert it into the statute or ordinance." *Pap's A.M. v. City of Erie*, 719 A.2d 273, 281 (Pa. 1998), *reversed on other grounds sub nom. City of Erie v. Pap's A.M.,* 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). However, to the extent that *Newman* and the trial court opinions upon which it relied assert that such a procedure violates the separation of powers, I believe they have misconstrued that doctrine.

> The separation of powers doctrine provides that "the executive, the legislature and the judiciary are independent, co-equal branches of government." *Beckert v. Warren*, 497 Pa. 137, 439 A.2d 638, 642 (Pa. 1981). The dividing lines among the three branches "are sometimes indistinct and are probably incapable of any precise definition." *Stander v. Kelly*, 433 Pa. 406, 250 A.2d 474, 482 (Pa. 1969) (plurality). "Under the principle of separation of the powers of government, . . . no branch should exercise the functions exclusively committed to another branch." *Sweeney v. Tucker*, 473 Pa. 493, 375 A.2d 698, 706 (Pa. 1977).

*Commonwealth v. Melvin*, 2014 PA Super 181, *5.

It has been written that "[w]hen the legislative and executive powers are united in the same person, or in the same body of magistrates, there can be no liberty[.]" John Adams, A Defence of the Constitutions of Government of the United States of America, Vol. I, at 153 (3rd Ed. Philadelphia, 1797). Writing further, Adams eloquently set forth, "Again, there is no liberty, if the power of judging be not separated from the legislative and executive powers: were it joined with the legislative, the life

and liberty of the citizens would be exposed to arbitrary control[.]" *Id*. at 154.

However, the act of following *Alleyne* by requiring a jury to determine the facts necessary to trigger a statutory mandatory sentence in no way is a legislative act by either prosecutors or the courts. Instead, we are excising the burden of proof section and enforcing the constitutional pronouncement of *Alleyne*. This is not legislating, but enforcing constitutional rights based on existing binding precedent. Indeed, this procedure bears a strong resemblance to our procedure pertaining to certain other criminal offenses. For example, our theft statutes do not discuss a burden of proof, but the amount of money stolen aggravates the crime. The jury must therefore determine the amount taken in rendering its verdict. We do not require the statute to delineate that the jury must unanimously determine these facts beyond a reasonable doubt. This is merely presumed based on constitutional law. Admittedly, in these situations the elements are included in the underlying offense, but, as the United States Supreme Court has repeatedly opined, it matters not what label a fact is given, whether it be an element or sentencing factor. *See Apprendi*, *supra*; *Booker*, *supra* at 242; *Alleyne*, *supra*.

To engraft on a statute a beyond a reasonable doubt burden of proof based on a United States Supreme Court decision is no more legislating than requiring the Commonwealth to prove the age of a victim or the amount of

- 10 -

money stolen beyond a reasonable doubt. The proper question, as mentioned earlier, is: had the legislature known when it passed the mandatory sentencing provision that the burden of proof provision was void, how would it have exercised its power to define sentencing practices? *Cf. Annenberg*, *supra* at 347 (rejecting contention that Supreme Court's severing of a statute would violate the separation of powers by arrogating to itself the power to tax and stating, "When this Court severs a void provision from a statute, it is doing so to attempt to effectuate legislative intent. We are therefore not arrogating to ourselves the power to tax but rather are attempting to determine how the legislature would have exercised its taxing power had it known, in 1889, that the exclusion was void.").

Pointedly, certain Pennsylvania mandatory statutes, as applied, are unaffected by *Alleyne* despite their burden of proof provisions running afoul of that decision. For example, 42 Pa.C.S. § 9718 applies mandatory sentences based on the youth of the victim. In certain instances, however, the age of the victim is already included as an element of the crime, specifically with regard to various sex offenses. In those situations, there should be no impediment to sentencing the defendant under the mandatory sentence. *See Matteson*, *supra*.

Further, I add that 42 Pa.C.S. § 9717, a mandatory minimum statute, which applies to crimes committed against the elderly, includes no burden of proof provision. Relying on the no longer constitutionally-sound decision in

*McMillan v. Pennsylvania*, 477 U.S. 79 (1986), this Court applied a preponderance of the evidence standard at sentencing. *Commonwealth v. Rizzo*, 523 A.2d 809 (Pa.Super. 1987). Based on the decision in *Alleyne*, that holding is invalid and the *Alleyne* decision provides the proper mode for imposing that mandatory minimum sentence. As the Commonwealth astutely observes, the entire Crimes Code is devoid of providing a burden of proof for any element of a crime. Rather, no such burden of proof is required to be delineated based on well-ensconced constitutional principles. Consistent with Judge Mundy's view in her concurring opinion in *Newman*, I believe that "pre-existing procedures and *Alleyne* specify that the burden of proof shall be beyond a reasonable doubt and it shall be submitted to the jury." *Newman*, *supra* at 106 (Mundy, J., concurring).

In this respect, the trial court opinions relied on by the *Newman* Court are similarly unpersuasive and misplaced precisely because the default method of resolving disputed questions of fact is for the jury, even absent a legislative directive. Frankly, the United States Supreme Court has judicially directed the manner in which mandatory minimum sentences are to be decided: via a jury determination of the facts included in those mandatory sentences.

Our United States Supreme Court's decision in *Booker* is illustrative. *Booker* involved an *Apprendi* challenge to the federal sentencing guidelines and resulted in two separate majority opinions. The first majority opinion

declared that the then-mandatory federal sentencing guidelines were unconstitutional to the extent they permitted a judge to increase a defendant's maximum sentence based on facts the court decided by a preponderance of the evidence. The second majority opinion (hereinafter the "remedial opinion") concluded that the proper remedy was not to strike the guidelines in their entirety, but to sever those provisions that made the guidelines mandatory.

Therein, Booker was charged with possession with intent to distribute fifty grams of crack cocaine. The jury heard evidence that he had 92.5 grams of crack cocaine when arrested. At sentencing, however, the judge determined that Booker possessed an additional 566 grams of crack cocaine. This finding resulted in an almost ten-year increase in the sentence Booker would have received under the guidelines based solely on the jury verdict. Consistent with its earlier **Apprendi** and **Blakely v. Washington**, 542 U.S. 296 (2004) decisions, the United States Supreme Court concluded that Booker's jury trial rights were infringed and that "any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." **Booker**, **supra** at 244.

In doing so, the Court rejected the government's position that requiring a jury to determine the sentencing factors beyond a reasonable

doubt would violate the separation of powers doctrine by unconstitutionally granting the Federal Sentencing Commission, which promulgated the guidelines, the legislative power to define criminal elements. The Court maintained that the argument was without merit because "the impact of such facts on federal sentences is precisely the same whether one labels such facts 'sentencing factors' or 'elements' of crimes." *Id*. at 242.[3]

The remedial opinion in *Booker* severed the provisions of the Act in question that made it mandatory. The remedial justices maintained that the Act, as written, with jury fact-finding added, was preferable to total invalidation of the statute, but that the legislature would have preferred its proffered remedy. In creating its remedy, the remedial majority opined, "We seek to determine what 'Congress would have intended' in light of the Court's constitutional holding." *Id*. at 246. This statement is wholly consistent with the Pennsylvania Supreme Court's approach in *Annenberg*, *supra*, and with long-standing severability jurisprudence.

The remedial *Booker* opinion opined that requiring juries to determine the facts necessary to impose the increased guideline sentences "would create a system far more complex than Congress could have intended." *Id*.

---

[3] In the case at bar, we have no similar separation of powers concern because the legislature passed the mandatory minimum statute in question. Describing the facts necessary in those statutes as sentencing factors or elements of an aggravated crime does not impact the state sentences that could be imposed.

at 254. Accordingly, it chose to make the mandatory guidelines advisory only. The dissenting opinions from that remedial opinion, however, cogently recognized that the remedial majority was not excising unconstitutional provisions of the law in question.

With this in mind, I could share the sentiments of the *Newman* Court and the trial court opinions it discussed with respect to courts acting in a legislative function, had we declared that the mandatory minimum statutes would no longer be mandatory. However, that is not what I propose, nor what the Commonwealth sought here or in our earlier decisions. I add that submitting to the jury those facts included in the current mandatory sentencing statutes affected by *Alleyne* is not complex, nor does it create a unwieldy system that our General Assembly would not have enacted had it known the burden of proof provision was unconstitutional.

As in the federal system, the vast majority of criminal proceedings are the result of plea bargains. Where a defendant admits to the facts needed to trigger a mandatory sentence, there are no constitutional problems. As Justice Stevens pointed out in his dissent to the remedial *Booker* opinion, in the event that a trial occurs, "prosecutors could avoid an *Apprendi* . . . problem simply by alleging in the indictment the facts necessary to reach the chosen Guidelines sentence." *Booker*, *supra* at 277 (Stevens, J., dissenting). Instantly, absent the holdings in *Newman* and *Valentine*, prosecutors could avoid *Alleyne* issues by including in the criminal

information the facts required to reach the mandatory sentence at issue. In this regard, Justice Stevens noted at that time that the Department of Justice was advising federal prosecutors to charge and prove facts that increased statutory maximums for drug types and quantities. He accurately recognized that "[e]nhancing the specificity of indictments would be a simple matter[.]" *Id*. In Pennsylvania, the same result could be achieved by prosecutors and judges following the procedure that occurred and was reversed in *Valentine*, that is, including the facts in the criminal information and submitting the question to the jury.

Rather than engage in a wholesale striking down of our mandatory sentencing statutes, I would allow prosecutors to prove any fact required to subject the defendant to a mandatory sentence to the jury beyond a reasonable doubt. In the event that the defendant elects to proceed non-jury, as occurred here, the trial judge would be charged with finding the essential facts beyond a reasonable doubt. Furthermore, where the fact-finder's findings already encompass the necessary facts needed to subject a defendant to a mandatory minimum sentence, or the facts have been stipulated too, I would find any non-compliance with *Alleyne* to be harmless. *See Watley*, *supra*; *Matteson*, *supra*; *United States v. Cotton*, 535 U.S. 625 (2002) (*Apprendi* violation harmless); *United States v. King*, 751 F.3d 1268, 1279 (11th Cir. 2014) (*Alleyne* violation

harmless); ***United States v. Harakaly***, 734 F.3d 88 (1st Cir. 2013) (same); ***United States v. Mack***, 729 F.3d 594, (6th Cir. 2013) (same).

Since I believe the ***Newman*** Court and the trial court opinions it discussed misperceived the legislative intent analysis pertaining to the severability doctrine and did not consider what the legislature would have intended had it known that the burden of proof provisions of its mandatory statutes were unconstitutional, I cannot join the majority in full. Absent the decisions in ***Newman*** and ***Valentine***, I would find that because the evidence in this case that the drug sale occurred within one thousand feet of a school was uncontradicted, the ***Alleyne*** error was harmless. However, because ***Newman*** is binding on this panel, as is ***Valentine***, I am constrained to concur in the result.