J-S12006-15
J-S12007-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROLANDO HERNANDEZ, | |
| Appellant | No. 1624 EDA 2013 |

Appeal from the Judgment of Sentence May 10, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003464-2010

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROLANDO HERNANDEZ, | |
| Appellant | No. 1625 EDA 2013 |

Appeal from the Judgment of Sentence May 10, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0015322-2010

BEFORE: BOWES, SHOGAN and FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 18, 2015**

Rolando Hernandez has filed these appeals at two criminal action numbers. Appellant's challenge is identical in both appeals, and we have consolidated them for purposes of disposition. Since Appellant was

_____
* Former Justice specially assigned to the Superior Court.

sentenced to a mandatory minimum sentence under a statute that has been declared unconstitutional as a whole, we are constrained to vacate his judgment of sentence and remand for resentencing. In all other respects, we affirm.

On December 28, 2009, Appellant was charged with possession of a controlled substance with intent to deliver ("PWID") and conspiracy at criminal action number 3464-2010. The facts underlying that offense were set forth by the trial court as follows.

> At approximately 9:00 a.m. on December 28, 2009, Officers Timothy Linahan and John Fleming set up surveillance for the sale of narcotics in an unmarked police vehicle on the 2600 block of North Waterloo Street. Officers Linahan and Fleming parked their car on the west side of 2700 block of North Waterloo Street, facing southbound toward the 2600 block. The Officers observed Michael Cartagena and Luis Melendez standing on the west side of 2600 Waterloo Street.
>
> At approximately 9:30 a.m., Officers Linahan and Fleming saw an unidentified Hispanic female approach Melendez, have a brief conversation with him, and hand him money. In response, Melendez crossed to the east side of the street, went to a parked 2003 Buick, and bent down to retrieve small objects located underneath the car on the curb side. He then returned to the female, spoke to her, and handed her small objects. Officers were unable to stop the female.
>
> At approximately 9:55 a.m., a male later identified as Douglas Stansbury approached Melendez. After a brief conversation, Stansbury handed money to Melendez. Again, Melendez crossed to the east side of the street, retrieved objects from near the same Buick, and returned to Stansbury. Melendez gave Stansbury small objects, and Stansbury left the area. Officer Linahan radioed for other officers to stop Stansbury. Sergeant Lonnie Clausson stopped Stansbury and found a yellow tint packet of cocaine in his mouth.

At approximately 10:15 a.m., Melendez and Cartagena entered the Buick parked on the east side of the street. Then, Melendez exited the Buick and crossed over to the west side of the block. At approximately 10:20 a.m., two unknown white males approached Melendez. After a brief conversation, the two males handed Melendez money. Again, Melendez crossed from the west side to the east side of the street, retrieved small objects, returned to the two males, and handed them the objects. The males then left the area. Officers were unable to locate the males.

At approximately the same time, two unknown black males approached Melendez, spoke to him, and handed him money. Melendez put one finger up in the air, indicating "one minute." Melendez then knocked at the door of 2640 Waterloo Street. After approximately thirty seconds, the Appellant answered the door and let Melendez into the house. Two to three minutes later, Melendez exited the house, crossed to the east side of the street, and bent down. Melendez set an object down near the rear of the parked Buick. Melendez then walked over to the two black males and handed them small objects. The males left the scene. Officers were unable to stop these males. At approximately 10:45 a.m., Melendez again entered the Buick with Cartagena.

At approximately 11:00 a.m., Cartagena exited the Buick, crossed the street, and stood on the west side of 2600 Waterloo Street. An unknown Hispanic male and female approached Cartagena. The individuals handed Cartagena money. Like Melendez, the Appellant crossed to the east side of the street, retrieved small objects from behind the Buick, returned, and handed them the objects. Back-up officers were unable to locate the buyers.

At approximately 11:15 a.m., Officer Linahan radioed for available backup officers to stop Cartagena and Melendez. Sergeant Lonnie Clausson and Officer Swift responded to the call and stopped Cartagena and Melendez. Officer Linahan exited his vehicle, walked toward 2600 Waterloo Street, and approached the Buick. Officer Linahan looked through the car window and observed a clear baggie containing yellow tint packets of crack cocaine.

Sergeant Clausson and Officer Linahan then walked to 2640 Waterloo Street and knocked on the front door. The Appellant poked his head out of a second floor front bedroom window and said that he would be right down. After two to three minutes, the Appellant answered the front door. The police subsequently detained the Appellant for investigation pending a search warrant.

The Officers later called in a K-9 dog to sniff for drugs in the parked Buick. After the dog gave a positive indication for drugs near the doors, the Officers secured the car. Officers then conducted a walk-through of 2640 Waterloo to secure the house while they waited for the search warrant. The Officers subsequently contacted Lieutenant Robert Otto [sic[1]] and Officer Michael Spicer of the Narcotics Field Unit.

Officer Spicer and Lieutenant Otto [sic] obtained a search warrant for the Buick and for 2640 Waterloo Street and confiscated the drugs in the car and the house. In the Buick, Spicer and Otto confiscated a marijuana blunt from inside the ashtray. They also found a clear packet of marijuana on the front seat and plastic with 28 yellow Ziploc packets of crack cocaine. In the console between the two front seats, Spicer and Otto further confiscated $33.00, and two bills addressed to Cartagena.

Inside the house, Officer Spicer and Lieutenant Otto [sic] recovered 92 packets of marijuana and 55 orange packets of powder cocaine in a bedroom. The Officers recovered 364 yellow tinted Ziploc packets of crack cocaine near a .40 [caliber] semiautomatic handgun with 3 live rounds in the basement. The Officers also recovered 61 Xanax pills, 11 packets of heroin, marijuana, and various drug paraphernalia in the living room. Additionally, the Officers recovered money in the basement, living room, and bedroom totaling $1,837.00. In the bedroom and the living room, the Officers found unused Ziploc packets and jars. They also found a lease, access card, Comcast bill, a payment card, and mail in the Appellant's name.

Trial Court Opinion, 4/9/14, 3-8 (footnotes and emphasis omitted).

---

[1] The officer's last name, according to the trial transcript, was Ott.

While Appellant was on release from bail as to the December 2009 charges, he was arrested on August 21, 2010 and charged at criminal action number 15322-2010 with PWID, conspiracy, possession of drug paraphernalia, persons not to possess a firearm, and possession of an unlicensed firearm. Appellant does not raise any challenge to his convictions for those offenses; therefore, we find it unnecessary to detail those facts. A full recitation of the facts leading to those charges can be found in the trial court's opinion at pages 8-12.

The actions were consolidated for trial and Appellant proceeded to trial with co-defendants Michael Cartagena and Suhay Rodriguez. A jury found Appellant guilty of PWID and conspiracy at 3464-2010 and of PWID, conspiracy, possession of drug paraphernalia, and carrying an unlicensed firearm at 15322-2010. Thereafter, the trial court found Appellant guilty of persons not to possess a firearm. Prior to sentencing, Appellant filed a motion for extraordinary relief asking for a new trial based upon after-discovered evidence.[2] This motion solely related to the charges lodged at 15322-2010 and concerned the fact that one of the police officers involved in that matter, Officer Spicer, was no longer being used as a witness in narcotics cases. The court heard argument on the motion on March 15,

---

[2] The filing of such a motion is ordinarily improper since motions for extraordinary relief are intended to be oral. Pa.R.Crim.P. 704(B); **see also** **Commonwealth v. Howe**, 842 A.2d 436, 441 (Pa.Super. 2004); **compare** Pa.R.Crim.P. 720(C).

- 5 -

2013, and denied it on May 10, 2013. That same date, the court sentenced Appellant at both cases to an aggregate term of imprisonment of eight to sixteen years incarceration. Specifically, the court imposed a drug mandatory minimum sentence of five to ten years incarceration pursuant to 18 Pa.C.S. § 7508, and a consecutive three to six years incarceration for criminal conspiracy at case number 3464-2010. Additionally, the court imposed concurrent sentences at case number 15322-2010. One of those sentences, a five to ten year period of imprisonment was a mandatory minimum sentence, pursuant to both § 7508 and 42 Pa.C.S. § 9712.1, the latter of which relates to firearms in close proximity to drugs.

Appellant timely appealed. The trial court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court authored its Rule 1925(a) opinion. The matter is now ready for this Court's review. In this appeal, Appellant raises one issue:

> Did the trial court commit an abuse of discretion by denying Appellant's motion for extraordinary relief based on evidence that a police officer involved in the instant matter had been disavowed by the Philadelphia District Attorney's Office after Appellant was convicted?

Appellant's consolidated brief at 2.[3]

---

[3] Appellant's brief and arguments are identical to those of his co-defendant Michael Cartagena, whose case also was heard by this panel. Our discussion of the law and arguments of the parties is therefore identical in both matters, although citations to the relevant brief's page numbers differ.

Appellant's claim implicates the law governing after-discovered evidence. In **Commonwealth v. Padillas**, 997 A.2d 356 (Pa.Super. 2010), this Court opined that a petitioner must show the evidence "(1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted." **Id**. at 363. Failure to satisfy any of these aspects of the test results in the claim failing. **Padillas**, **supra** at 363.

With respect to determining the diligence aspect of the test, a petitioner cannot show diligence if he declined "to question or investigate an obvious, available source of information[.]" **Id**. In addition to demonstrating that the evidence could not be ascertained despite reasonable diligence, a petitioner must prove that the evidence is not merely cumulative or corroborative of other evidence introduced at trial. Evidence that supports a defense leveled at trial may be considered corroborative and/or cumulative. **Id**. at 365.

In considering the prejudice prong of the after-discovered evidence test, courts are to look to "the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." **Padillas**, **supra** at 365.

- 7 -

Moreover, the after-discovered evidence must be admissible. ***Commonwealth v. Castro***, 93 A.3d 818 (Pa. 2014).

Appellant argues that because he learned after his trial that the Philadelphia District Attorney's Office no longer prosecuted drug cases involving Officer Spicer and several other narcotics officers, including an Officer Betts,[4] all of whom had been transferred from the narcotics unit, he should be awarded a new trial. According to Appellant, on December 3, 2012, Philadelphia District Attorney R. Seth Williams notified the Philadelphia Police Commissioner that he would no longer use Officer Spicer, Officer Betts, and four other officers in drug cases or accept narcotics cases where those officers were necessary witnesses. In addition, the correspondence indicated that the District Attorney's Office would no longer approve warrants where any of the officers were affiants or provided averments necessary to establish probable cause.

Several articles from the Philadelphia Inquirer from December 5, 2012, December 7, 2012, and January 31, 2013, appeared in relation to the District Attorney's decision. Those newspaper articles asserted that Officer Spicer, Officer Betts, and their colleagues could no longer be considered credible witnesses and had been the target of Internal Affairs investigations and federal lawsuits relative to false arrests, fraudulent reports, and the use

---

[4] Although briefly mentioning Officer Betts in his brief, Appellant's focus is on Officer Spicer, who had more extensive involvement in the case.

of excessive force. According to the January 31st article, the Philadelphia District Attorney's Office had withdrawn 260 cases where the officers were involved.

Appellant maintains that the fact, which the Commonwealth does not dispute, that it no longer prosecutes drug cases where Officer Spicer is an essential witness could not have been discovered before or during his trial. Specifically, the Commonwealth tried Appellant in September of 2012, before the District Attorney's notification to the Police Commissioner.

Appellant continues that the evidence would not be used solely to impeach Officer Spicer and Officer Betts because such evidence would also "call into question the validity of the search warrant that Officer Spicer prepared and obtained." Appellant's brief at 14. In Appellant's view, attacking Officer Spicer's reliability would go "directly to establish appellant's innocence at least with respect to the drugs found in the house[.]" *Id*.

Next, Appellant contends that since there was no evidence at trial that Officer Spicer or Officer Betts were no longer being utilized as witnesses in drug cases, the evidence was not cumulative or corroborative of that presented at trial. Lastly, Appellant asserts that, had the jury been aware that the District Attorney's Office was not prosecuting drug cases where Officer Spicer was a material witness, it would likely have reached a different verdict.

The Commonwealth responds that Appellant's proffered evidence consisted of newspaper articles which, in **Castro**, **supra**, were held insufficient to constitute after-discovered evidence. In **Castro**, the Pennsylvania Supreme Court reversed a decision by this Court that had remanded for additional proceedings on the basis of after-discovered evidence in the nature of newspaper articles. Those articles indicated that the Philadelphia police officer involved in the undercover drug investigation in that matter had engaged in serious misconduct in other cases. The **Castro** Court concluded that the newspaper articles were not admissible evidence.

The Commonwealth also posits that Appellant cannot demonstrate that a different verdict would be likely if the jury were apprised of Officer Spicer's issues. In leveling this aspect of its response, the Commonwealth notes that Officer Spicer had limited involvement in the case. The evidence supporting Appellant's convictions stemmed from eyewitness observations from Officer Linahan and Officer Fleming. It points out that the officers observed numerous hand-to-hand drug transactions, and that Appellant's co-conspirator was seen restocking a stash of drugs from another conspirator's house. Further, police arrested one buyer who had a yellow-tinted packet of crack cocaine in his mouth. This cocaine was consistent with that viewed by Officer Linahan and Officer Clausson inside the Buick that Appellant and Melendez were seen utilizing.

The Commonwealth adds that Officer Spicer's testimony regarding additional cocaine and mail with Appellant's name inside the Buick was cumulative of the overwhelming additional evidence that Appellant used the vehicle when distributing drugs. It points out that other officers also testified that Appellant's conspirator, Roberto Hernandez, lived in the house that was being used to supply Appellant and Melendez with drugs. Finally, the Commonwealth assails Appellant's position with respect to Officer Spicer's involvement with securing the search warrant. It submits that the affidavit for that warrant was based on information provided by Officer Linahan.

We find that, based on the additional evidence supplied by other officers, the revelation of Officer Spicer's removal from the narcotics unit and the District Attorney's refusal to prosecute cases in which he was a material witness, would not have altered the verdict. Here, Officer Spicer was not an essential witness as to the elements of the offenses. Although Officer Spicer was the affiant on the search warrant, the information used to establish probable cause came from other officers. Evidence that Appellant was involved in hand-to-hand cocaine transactions was extensive and had no relation to Officer Spicer. Officers, other than Officer Spicer, observed Appellant inside the Buick in question and engaging in frequent interactions that, viewed in a light most favorable to the Commonwealth, were plainly drug sales. A drug sniffing dog alerted on the vehicle prior to Officer

Spicer's involvement. Moreover, evidence that the house in question was being used as a drug operations base was supported by officers other than Officer Spicer.

Since the evidence, even excluding the evidence discovered by Officer Spicer,[5] was overwhelming that Appellant was selling cocaine and doing so with other individuals, there is no probability that the jury would have found Appellant not guilty of PWID and conspiracy based on information regarding potential corruption on the part of Officer Spicer. Accordingly, his issue fails.

Nonetheless, and although Appellant does not raise the issue, we are constrained to vacate Appellant's judgment of sentence since he was sentenced under a mandatory sentencing statute that has been struck down as unconstitutional as a whole. *See Commonwealth v. Vargas*, 2014 PA Super 289 (*en banc*); *Commonwealth v. Newman*, 99 A.3d 86 (Pa.Super. 2014) (*en banc*); *Commonwealth v. Fennell*, 105 A.3d 13 (Pa.Super. 2014); *compare also Commonwealth v. Valentine*, 101 A.3d 801 (Pa.Super. 2014); *Commonwealth v. Cardwell*, 105 A.3d 748 (Pa.Super. 2014); *Commonwealth v. Bizzel*, 2014 PA Super 267; *Commonwealth v.*

---

[5] We note that Officer Spicer was not the only officer collecting evidence from the house.

***Wolfe***, 2014 PA Super 288; ***Commonwealth v. Ferguson***, 2015 PA Super 1.[6]

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/18/2015

---

[6] Writing solely for myself, I note that in recent cases I have criticized this Court's severability and separation of powers analysis relative to mandatory minimums, ***Commonwealth v. Bizzel***, 2014 PA Super 267 (Bowes, J., concurring); ***Commonwealth v. Wolfe***, 2014 PA Super 288 (Bowes, J., concurring) (joined by Jenkins, J.), and suggested that we re-visit our legality of sentence paradigm as it relates to ***Alleyne*** mandatory minimum questions. ***See Wolfe***, ***supra***. Further, I have been reluctant to *sua sponte* overturn a mandatory sentence without adequate briefing. ***See Wolfe***, ***supra*** at \*9 (noting that our Pennsylvania Supreme Court has declined to address illegal sentencing questions not raised or adequately argued in that court). I continue to adhere to those views, but I am currently bound by the decisions cited in the body of this memorandum.