J-S06042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PAUL ERIC YOCKEY | : | |
| | : | |
| Appellant | : | No. 458 WDA 2024 |

Appeal from the Judgment of Sentence Entered December 19, 2023
In the Court of Common Pleas of Cameron County Criminal Division at
No(s): CP-12-CR-0000048-2022

BEFORE: PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: April 10, 2025**

Appellant, Paul Eric Yockey, appeals from the aggregate judgment of sentence of 66 to 264 months' incarceration, imposed after a jury convicted him of several offenses, including eleven counts of persons not to possess a firearm, 18 Pa.C.S. § 6105(a)(1). On appeal, Appellant contends that section 6105 is unconstitutional, both facially and as applied to Appellant, under ***New York State Rifle & Pistol Assoc., Inc. v. Bruen***, 597 U.S. 1 (2022). After careful review, we affirm.

We glean the following facts from the record. On August 30, 2022, a Pennsylvania State Game Warden received reports of gunshots and two dead deer on Appellant's property. When the warden arrived, he observed the dead deer and spoke with Appellant, who admitted that he had fired a shotgun at the animals. A subsequent search of Appellant's home revealed that he possessed eleven firearms. Appellant was prohibited from possessing a

firearm based on his 2008 conviction of stalking, 18 Pa.C.S. § 2709.1(a)(2), which is a first-degree misdemeanor and one of the enumerated offenses that prohibits a person from possessing a firearm under 18 Pa.C.S. § 6105. **See** 18 Pa.C.S. § 6105(b).

Based on these facts, Appellant was convicted of, *inter alia*, eleven counts of persons not to possess a firearm under section 6105(a)(1). He was subsequently sentenced to the aggregate term of incarceration set forth *supra*. Appellant filed a timely post-sentence motion, which was denied. He then filed a timely notice of appeal, and he and the court thereafter complied with Pa.R.A.P. 1925. Herein, Appellant states two issues for our review:

> I. Whether, under the United States Supreme Court's decision in … **Bruen**, … and the Third Circuit's decision in **Range v. Attorney General United States of America**, 69 F.4th 96 (3d. Cir. 2023), 18 Pa.C.S. § 6105 violates the 2nd Amendment of [the] United States Constitution and Article I, Section 21 of the Pennsylvania Constitution on its face?
>
> II. Whether, under the United States Supreme Court's decision in … **Bruen**, … and the Third Circuit's decision in **Range**…, 18 Pa.C.S. § 6105 violates the 2nd Amendment of [the] United States Constitution and Article I, Section 21 of the Pennsylvania [Constitution]?

Appellant's Brief at 12 (some spacing altered).

Appellant's issues appear nearly identical, but in the Argument section of his brief, he clarifies that his first issue challenges the facial constitutionality of section 6105, while his second issue challenges the constitutionality of section 6105 as applied to him. We begin by recognizing that,

> [a]cts passed by the General Assembly are strongly presumed to be constitutional, including the manner in which they were passed.

- 2 -

Accordingly, a statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution. If there is any doubt that a challenger has failed to reach this high burden, then that doubt must be resolved in favor of finding the statute constitutional.

When an appellant challenges the constitutionality of a statute, he or she presents this Court with a pure question of law, for which our standard of review is *de novo* and our scope of review is plenary.

[As indicated], a statute is presumed to be constitutional and will only be invalidated as unconstitutional if it clearly, palpably, and plainly violates constitutional rights. Further, a defendant may contest the constitutionality of a statute on its face or as[]applied. A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case. An as-applied attack, in contrast, does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right. A criminal defendant may seek to vacate his conviction by demonstrating a law's facial or as-applied unconstitutionality.

*Commonwealth v. Bradley*, 232 A.3d 747, 756–57 (Pa. Super. 2020) (cleaned up).

In the instant case, we first address the trial court's conclusion that Appellant waived his facial constitutional challenge to section 6105 because he failed to raise this claim in his post-sentence motion. *See* Trial Court Opinion (TCO), 8/7/24, at 1. After reviewing the record, we agree with the court that Appellant is raising this issue for the first time on appeal. Notably, Appellant filed a supplemental post-sentence motion on August 22, 2023, challenging section 6105 on the basis that it "is unconstitutional as applied to [Appellant] in this case." Supplemental Post-Sentence Motion, 8/22/23, at unnumbered 4 ¶ 20. Aside from cursorily stating, in his conclusory sentence,

- 3 -

that he "respectfully requests [the c]ourt to declare 18 Pa.C.S. § 6105 unconstitutional and vacate [Appellant's] convictions at counts 1-11[,]" Appellant did not develop any argument that section 6105 is facially unconstitutional. *Id.* at unnumbered 5 (some spacing altered). Accordingly, we agree with the trial court that Appellant has waived his first issue for our review. *See Commonwealth v. McIntyre*, --- A.3d ----, 2025 PA Super 56 (Pa. Super. filed Mar. 10, 2025) (*McIntyre II*) (finding McIntyre waived his claims that section 6105 is unconstitutional under the Pennsylvania Constitution and as applied to him because he did not raise those claims before the trial court) (citing Pa.R.A.P. 302(a) (providing that issues not raised in the lower court are waived and cannot be raised for the first time on appeal)); *Commonwealth v. Armolt*, 294 A.3d 364, 378 (Pa. 2023) (stating that, in general, constitutional challenges are subject to ordinary issue preservation rules)).

Nevertheless, even if not waived, we would be bound by our recent decision in *McIntyre II* to conclude that section 6105 is not facially unconstitutional. Initially, in *Commonwealth v. McIntyre*, 314 A.3d 828 (Pa. Super. 2024) (*McIntyre I*), we issued a decision finding that section 6105 is not unconstitutional under *Bruen*. In *Bruen*, the United States Supreme Court held that a New York statute violated the Second Amendment by requiring applicants for a permit to carry a concealed firearm in public to show a special need for the license. In reaching its decision, the *Bruen* Court clarified that,

- 4 -

the standard for evaluating whether a modern firearm regulation violates the Second Amendment involves two questions.

First, a reviewing court must ask whether the plain text of the Second Amendment covers the individual's proposed conduct so that the Constitution presumptively protects that conduct. ***See Bruen***, 597 U.S. at 17….

If so, the second question is whether the government has justified the firearm regulation by demonstrating that it is consistent with this Nation's historical tradition of firearm regulation. ***See id***.

***McIntyre II***, ***supra*** at *6. Applying this test in ***McIntyre I***, we found that section 6105 survived McIntyre's facial constitutional challenge.

McIntyre appealed to our Supreme Court, which ultimately vacated our decision in ***McIntyre I*** and remanded for reconsideration in light of ***United States v. Rahimi***, 602 U.S. 680 (2024). ***See Commonwealth v. McIntyre***, 330 A.3d 394 (Pa. 2024) (*per curiam* order). In ***Rahimi***, the High Court upheld the facial constitutionality of a federal statute that forbids possession of a firearm to a person subject to a domestic violence order if the order includes a finding that the person "represents a credible threat to the physical safety" of the person's intimate partner. ***Rahimi***, 602 U.S. at 684-85.

On remand, the ***McIntyre II*** panel again found that section 6105 is facially constitutional, even in light of ***Rahimi***. At the outset, the ***McIntyre II*** panel recognized that,

[t]he Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II.

***McIntyre II***, ***supra*** at *6. We then explained that,

> [s]ection 6105, which McIntyre contends is violative of the Second Amendment, is titled "Persons not to possess, use, manufacture, control, sell or transfer firearms." Subsection (a) of [s]ection 6105 provides that a person who has been convicted of an offense enumerated in subsection (b) shall not possess, use, control, sell, transfer, or manufacture a firearm in this Commonwealth. *See* 18 Pa.C.S.[] § 6105(a). Subsection (b) then enumerates 38 offenses applicable to subsection (a), including corrupt organizations, aggravated assault, burglary and robbery. *See* 18 Pa.C.S.[] § 6105(b).

*Id.* (some spacing altered). We noted that McIntyre did not dispute that he had "previously been convicted of corrupt organizations, aggravated assault, burglary and robbery and that those convictions disqualified him from possessing a gun under [s]ection 6105." *Id.* Instead, McIntyre argued "that by prohibiting convicted felons such as himself, or others convicted of a statutorily-enumerated offense, from possessing a firearm, [s]ection 6105 violates the United States Constitution pursuant to *Bruen*." *Id.*

The *McIntyre II* panel disagreed. First, we observed that "*Bruen* did not directly address the question of whether prohibiting felons or other convicted offenders from possessing guns violates the Second Amendment[,]" as "the *Bruen* Court made clear that its decision involved and applied only to 'law-abiding' citizens." *Id.* at *8. We also stressed in *McIntyre II* "that the *Bruen* Court explicitly relied on [*District of Columbia v.*] *Heller*[, 554 U.S. 570 (2008),] throughout its opinion[,]" and "the *Heller* Court was very clear that an individual's Second Amendment rights are not unlimited and are subject to regulation." *Id.* We noted that the *Heller* Court

> explicitly cautioned that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of

firearms by felons…, [which are] presumptively lawful regulatory measures." [**Heller**,] 554 U.S. at 626…. In other words, **Heller**, on which **Bruen** not only relied but reinforced, specifically validated the prohibition on the possession of firearms by felons as being consistent with the individual rights protected by the Second Amendment. As with **Bruen**, we are bound by **Heller**.

**Id.**

Based on **Bruen** and **Heller**, the **McIntyre II** panel held that:

**Bruen** does not stand for the principle that convicted violent offenders such as McIntyre are "the people" who have a right to possess arms under the Second Amendment. **Bruen** in no way said that felons are protected under the Second Amendment, nor can its decision, with its hyper focus on "law-abiding" citizens, be read as providing the necessary support for such a determination.

Instead, **Bruen** reinforced **Heller**, which unequivocally stated that its holding that individuals had a right to bear arms under the Second Amendment did not in any way call into doubt the government's ability to prohibit felons from possessing firearms. Therefore, under **Heller**, we find that the plain text of the Second Amendment does not cover McIntyre and his possession of a firearm as a convicted offender.

**Id.** at *9 (footnote omitted). Finally, the **McIntyre II** panel determined that **Rahimi** did not require a finding that section 6105 is facially unconstitutional, focusing on the fact that **Rahimi** involved an "as-applied" challenge to the constitutionality of section 6105, which was not at issue in **McIntyre II**. **Id.**

In the instant case, Appellant filed his brief after our Supreme Court vacated **McIntyre I**, but before we filed our decision in **McIntyre II**. Notably, Appellant's counsel herein concedes that,

after reviewing the **Rahimi** decision, … [c]ounsel believes that on remand in **McIntyre** [**II**], this … Court will make the same determination that 18 Pa.C.S. § 6105 is not unconstitutional on its face. Therefore, [Appellant] here is constrained to concede that 18 Pa.C.S. § 6105 is not unconstitutional on its face.

- 7 -

Appellant's Brief at 30. Given that **McIntyre II** held that section 6105 is not unconstitutional on its face, even in the wake of **Rahimi**, and Appellant's concession to the facial constitutionality of section 6105 in light of **McIntyre II**, we need not discuss his first issue further. Section 6105 is facially constitutional under **McIntyre II**.

Next, we address Appellant's as-applied challenge to the constitutionality of section 6105. An as-applied constitutional challenge "is a question of law for which our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Farmer**, 329 A.3d 449, 451 (Pa. Super. 2024) (quoting **Commonwealth v. Bizzel**, 107 A.3d 102 (Pa. Super. 2014)).

First, we examine Appellant's contention that he is one of "the people" protected by the Second Amendment. At the outset of his argument, he "concedes that if he was currently found to pose a credible threat to the physical safety of others that he would not be 'of the people' protected by the Second Amendment." Appellant's Brief at 37. Appellant contends, however, that

> no such finding exists. The only finding in [Appellant's] case is that on January 8, 2008, in Lancaster County, Pennsylvania, … [Appellant] was sentenced to five (5) years of probation following a conviction for the offense of [s]talking, 18 Pa.C.S. § 2709.1, a misdemeanor of the first degree. More than 14 years passed from the time [Appellant] was convicted in Lancaster County of [s]talking to when he shot the deer that entered his garden on August 22, 2022.
>
> Because [Appellant] was not a credible threat to the physical health of others on August 22, 2022, nor does his conviction for

- 8 -

[s]talking more than 14 years earlier support such a finding, [Appellant] is "of the people" protected by the Second Amendment.

*Id.* at 37-38 (some spacing altered).

Our decision on whether Appellant qualifies as one of "the people" protected by the Second Amendment is guided by this Court's decision in *Farmer*. There, Farmer — who was prohibited from possessing a firearm under section 6105 due to his prior conviction of a gun-point robbery and other, related offenses — was found to be in possession of a gun while on parole, and was ultimately convicted under section 6105. *Farmer*, 329 A.3d at 451. On appeal, Farmer challenged the constitutionality of section 6105 as applied in his case. *Id.* ("The constitutionality of [section] 6105 as applied to [Farmer] is the only question before us.") (footnote omitted). The *Farmer* panel first assessed Farmer's argument that he was "included within 'the people' protected under the Second Amendment," *id.* at 455, and the Commonwealth's counter-position that under *Heller*, Farmer was "not among those people entitled to protection under the Second Amendment" due to his status as a convicted felon. *Id.*

Ultimately, the *Farmer* panel disagreed with the Commonwealth, relying on the Supreme Court's direction in *Heller* that there exists "a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Id.* (quoting *Heller*, 554 U.S. at 580). We therefore rejected the concept that the Second Amendment "categorically excludes 'felons' from among 'the people'" protected by the Second

Amendment. *Id.* at 456. Accordingly, we found that Farmer was protected by the Second Amendment, even though he was a convicted felon. *Id.* at 458.[1]

In this case, Appellant was convicted of a misdemeanor offense, rather than a felony. Moreover, it does not seem, based on the limited record before us, that Appellant's stalking offense was as violent as the gun-point crimes committed by Farmer. Thus, following our rationale in *Farmer*, we conclude that Appellant is one of "the people" protected by the Second Amendment.[2]

---

[1] We recognize that, as stated *supra*, the *McIntyre II* panel held that McIntyre, who was banned from possessing a firearm due to his felony convictions of burglary, robbery, and aggravated assault, was *not* one of "the people" protected by the Second Amendment. *See McIntyre II*, *supra* at *9 (stating that "*Bruen* does not stand for the principle that convicted violent offenders like McIntyre are 'the people' who have a right to possess arms under the Second Amendment[,]" and, "under *Heller*, … the plain text of the Second Amendment does not cover McIntyre and his possession of a firearm as a convicted offender"). Although *McIntyre II* seems inconsistent with our earlier decision in *Farmer* regarding whether a convicted, violent offender can be one of "the people" protected by the Second Amendment, we reiterate that *McIntyre II* involved only a facial challenge to the constitutionality of section 6105, whereas *Farmer* and Appellant's case both involve as-applied challenges. Thus, to the extent that *Farmer* and *McIntyre II* are inconsistent, we follow *Farmer* in assessing Appellant's as-applied challenge to section 6105.

[2] We note that in support of his argument that he is one of "the people" protected by the Second Amendment, Appellant relies primarily on the Third Circuit's analysis in *Range*. There, the circuit court concluded that Range, a convicted felon, remained one of "the people" protected by the Second Amendment. Thus, *Range* supports our conclusion that Appellant is also protected by the Second Amendment, despite his prior conviction for a misdemeanor offense. However, we note that, as a federal circuit court decision, *Range* is not binding on this Court. *See Commonwealth v. Stone*,
*(Footnote Continued Next Page)*

- 10 -

However, our conclusion that Appellant is protected by the Second Amendment does not end our inquiry. Next, we must address whether the legislature may constitutionally strip Appellant of his Second Amendment right to bear arms due to his prior misdemeanor offense of stalking. *See Farmer*, 329 A.3d at 458. As the *Rahimi* Court made clear, the legislature may deny a person of his right to bear arms if it "is consistent with this Nation's historical tradition of firearm regulation." *Id.* As we explained in *Farmer*,

> in … *Rahimi*, … the High Court upheld a Second Amendment challenge to a federal statute, 18 U.S.C.[] § 922(g)(8), that forbids possession of a firearm to a person subject to a domestic violence order if the order includes a finding that the person "represents a credible threat to the physical safety" of the person's intimate partner. [*Rahimi*, 602 U.S.] at 684…. The petitioner in that case argued that [section] 922(g)(8) was unconstitutional on its face. *Id.* at 689…. The Supreme Court disagreed.
>
> "From the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others." *Id.* at 693…. The *Rahimi* Court cited surety laws, whereby a person suspected of future misbehavior, including misuse of firearms, was required to post a bond or face jailtime. Those who posted bonds would forfeit the bond in the event of future misbehavior. *Id.* at 695…. "Going armed" laws "prohibited 'riding or going armed, with dangerous or unusual weapons, [to] terrify [] the good people of the land.'" *Id.* at 697 … (quoting 4 Blackstone 149). Punishment included imprisonment and forfeiture of weaponry. *Id.*

---

273 A.3d 1163, 1169 (Pa. Super. 2022) ("Although federal circuit court decisions are not binding on this Court, they may be considered for their persuasive value.") (citing *Commonwealth v. Little*, 246 A.3d 312, 328 n.18 (Pa. Super. 2021)). Moreover, *Range* has been vacated and remanded for reconsideration in light of *Rahimi*. *See Garland v. Range*, -- U.S. ---, 144 S.Ct. 2706 (2024).

- 11 -

> Noteworthy here is the lesson the ***Rahimi*** Court drew from the surety and going armed laws. "Taken together, the surety and going armed laws confirm what common sense suggests: ***When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed***." ***Id.*** at 698…. That is, [section] 922(g)(8) was sufficiently analogous to the going armed and surety laws in both its "how" – restricting gun possession – and its "why" – because the subject posed a credible threat of violence to another. ***Id.*** at 698-99.

***Id.*** at 454 (emphasis added).

> Applying ***Rahimi*** to the facts of ***Farmer***, our Court explained:

> The Supreme Court's ***Rahimi*** opinion, particularly its "how" and "why" analysis with regard to "going armed" laws, provides an avenue for upholding felon firearms bans such as that of [section] 6105, at least temporarily. The common law "going armed" laws prohibited the use of dangerous weapons to terrify people and imposed forfeiture of weaponry as a punishment. ***Rahimi***, 602 U.S. at 697…. Plainly, the experience of being robbed at gunpoint and/or the threat of being robbed at gunpoint by one convicted of having done so in the past is sufficient to cause terror. And [section] 6105 is strikingly similar to [section] 922(g)(8), at issue in ***Rahimi***, in both how—prohibition of firearm possession—and why—[Farmer], based on his criminal history, poses a threat of violence—it restricts [Farmer's] Second Amendment right. And this case, as distinct from both ***Rahimi*** and ***Range***, involves a criminal conviction for a felony that involved the use of a firearm. Given the United States Supreme Court's treatment of the "going armed" laws in its ***Rahimi*** opinion, we can safely conclude that our nation does indeed have a history and tradition of disarming people like [Farmer]. We therefore find that [Farmer's] constitutional challenge to [s]ection 6105, on an as applied basis, has no merit.

***Id.*** at 458 (footnotes omitted).

In the instant case, Appellant was barred from possessing a firearm due to his conviction of stalking, which is defined, as follows:

> **(a) Offense defined.--**A person commits the crime of stalking when the person either:

- 12 -

\*\*\*

> (2) engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate either an intent to place such other person in **_reasonable fear of bodily injury_** or to cause substantial emotional distress to such other person.

18 Pa.C.S. § 2709.1(a)(2) (emphasis added).

Although graded as a misdemeanor, the language of section 2709.1(a)(2) makes clear that Appellant's stalking conviction could have been based on his placing another person in reasonable fear of bodily injury or, in other words, his posing "a clear threat of physical violence to another…." **_Rahimi_**, 602 U.S. at 698. Notably, Appellant offers no discussion of the facts of his stalking conviction, or any argument that he was **_not_** convicted of that offense due to his placing another person in reasonable fear of bodily injury.

Instead, after declaring that he "does not contest the finding by the **_Rahimi_** Court" that an individual may be disarmed when they pose a clear threat of physical violence to another, Appellant presents only the following, brief argument:

> [Appellant] contests that he poses a clear threat of physical violence to other people. The record in this matter is void of any such finding. [Appellant] further contests that a conviction for [s]talking 14 years prior to his possession of firearms suggests that he posed a clear threat of physical violence to others.
>
> Here, [Appellant] relied on the Lancaster sentencing order to his detriment that he was "of the people" who enjoyed the protection of the Second Amendment. [Appellant] avers that the interest of justice requires a finding that … [section] 6105 is unconstitutional as applied to him.

Appellant's Brief at 40-41.

- 13 -

Appellant seemingly suggests that section 6105 could only be constitutionally applied to him if he posed a clear threat of physical violence to others **at the time he possessed the guns** that triggered his section 6105 convictions. We disagree. Appellant was no longer permitted to possess a firearm at the moment he was **convicted of stalking**. Under **Rahimi**, it was constitutional for our legislature to disarm Appellant at that point, as long as he posed a clear threat of physical violence to another person. The fact that Appellant's stalking conviction could have been premised on his intending to place another person in reasonable fear of bodily injury sufficiently indicates that he threatened physical violence to his victim at the time he was disarmed.[3] This fact makes his case comparable to **Rahimi** and distinguishable from **Range**, where Range's firearm prohibition resulted from a clearly non-violent conviction for a making a false statement on a food stamp application. **See Range**, 69 F.4th at 98.[4] Accordingly, Appellant's stalking conviction establishes that he was constitutionally disarmed under the rationale of **Rahimi**, as applied by this Court in **Farmer**.

---

[3] Again, Appellant makes no argument that his stalking conviction was **not** based on a finding that he intended to place his victim in reasonable fear of bodily injury. It is Appellant's "heavy burden to demonstrate that the law 'clearly, palpably, and plainly violates the constitution'" as applied in his case. **Farmer**, 329 A.3d at 455 n.5 (quoting **Commonwealth v. Eid**, 249 A.3d 1030, 1041 (Pa. 2021)).

[4] Moreover, to the extent Appellant suggests that section 6105 is unconstitutional because it imposes a lifelong ban on the possession of firearms for individuals convicted of an enumerated offense, Appellant has not developed any meaningful, legally supported discussion in this regard.

In sum, Appellant has not proven that section 6105 is unconstitutional facially, or as applied to him. Therefore, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/10/2025