J-A01018-24                    2025 PA Super 56

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JONATHAN ANTHONY MCINTYRE | : | |
| | : | |
| Appellant | : | No. 354 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 14, 2022
In the Court of Common Pleas of Chester County
Criminal Division at No(s):  CP-15-CR-0002525-2020

BEFORE:   LAZARUS, P.J., PANELLA, P.J.E., and STEVENS, P.J.E.[*]

OPINION BY PANELLA, P.J.E.:                    **FILED MARCH 10, 2025**

Jonathan McIntyre appeals from his judgment of sentence for person prohibited from possessing a firearm, 18 Pa. C.S.A. § 6105(a)(1), which prohibits a person from possessing a firearm if he has previously been convicted of one of 38 enumerated offenses which makes him ineligible to possess a firearm. McIntyre argues Section 6105 is unconstitutional in the wake of **New York State Rifle & Pistol Association, Inc. v. Bruen**, 597 U.S. 1 (2022). In **Bruen**[1], the majority held that a New York statute, which required applicants to show a special need for a license allowing them to carry

---

[*] Former Justice specially assigned to the Superior Court.

[1] In **Bruen**, the majority opinion was written by Justice Clarence Thomas; Justice Samuel Alito filed a concurring opinion; Justice Brett Kavanaugh filed a concurring opinion which was joined by Chief Justice John Roberts; Justice Amy Coney Barrett filed a concurring opinion; and Justice Stephen Breyer filed a dissenting opinion which was joined by Justices Sonia Sotomayor and Elena Kagan.

a concealed firearm in public, violated the Second and Fourteenth Amendment rights of law-abiding citizens to bear arms for self-defense given that the Second Amendment's plain text covered the conduct at issue and the statute was not consistent with our Nation's historical tradition of firearm regulation. We do not agree with McIntyre's analysis. Instead, we conclude the Chester County Court of Common Pleas properly found that **Bruen** does not compel the conclusion that Section 6105 is unconstitutional. Further, we acknowledge that this case comes back to us on remand from the Pennsylvania Supreme Court with instructions to consider **United States v. Rahimi**, 602 U.S. 680 (2024), a more recent Second Amendment case from the United States Supreme Court. After careful review, we do not find **Rahimi** compels a different result.

In addition to his federal constitutional claim, McIntyre also raises or attempts to raise close to a dozen other claims on appeal. Those claims include: a claim that Section 6105 is unconstitutional under the Pennsylvania Constitution and as applied to him; a sufficiency and a weight claim; and a claim of prosecutorial misconduct. He also makes numerous allegations of trial court error. We find these issues are either waived or without merit. Accordingly, we affirm McIntyre's judgment of sentence for person prohibited from possessing a firearm under Section 6105.

To give context to McIntyre's claims on appeal, we begin with a summary of the factual background underlying the appeal. McIntyre was

convicted of, among other offenses, burglary, robbery and aggravated assault in 2000, convictions which undisputedly disqualified him from possessing a firearm under Section 6105. After McIntyre was paroled and released from prison for those convictions, he went to live with his uncle, Michall Daimion, in Malvern, Pennsylvania.

On May 31, 2020, McIntyre found a firearm at his uncle's house. McIntyre took the firearm, carried it to the woods of a park behind a nearby fire department and buried the firearm in those woods.

Family members contacted the police to report that the firearm was missing. McIntyre ultimately led Daimion to the spot where he had buried the weapon. McIntyre was charged with criminal mischief and person prohibited from possessing a firearm under Section 6105. Prior to trial, McIntyre filed several habeas corpus petitions, which the trial court denied.

The matter proceeded to a jury trial. The defense stipulated that McIntyre had been convicted of robbery, burglary, aggravated assault, conspiracy to commit burglary, conspiracy to commit robbery, and corrupt organizations in 2000, and that each of these offenses disqualified McIntyre from possessing a firearm under Section 6105. *See* N.T. Trial, 7/13/2022, at 177-179.

The Commonwealth called Daimion to the stand. Daimion testified that McIntyre was his nephew and had lived with him since McIntyre had been released on parole. Daimion explained he lived in a twin residence, with one

structure being the residence and the other structure housing the office for his business. *See id.* at 138-139. Daimion reported that on May 31, 2020, his daughter Michelle, who was also living at the house, approached him and told him about issues she was facing with McIntyre. *See id.* at 136, 156. Michelle ended up calling 911, and when the police arrived, Daimion recounted that McIntyre agreed to leave the house. *See id.* at 137.

Daimion testified that, after McIntyre left, his oldest daughter, Heather, went to her office on the office side of the twin. She discovered that her father's firearm, which she kept in her office, was missing. *See id*. At that point, McIntyre called Michelle's phone and Daimion spoke to McIntyre. Daimion recounted that McIntyre proceeded to direct Daimion to the location of the gun. *See id.* at 139. According to Daimion, he "walked [past] the fire company, down [past] the park, up into the woods" and McIntyre told him to look in the back of a log for the gun. *Id.* at 140. Daimion found the gun covered in leaves, and estimated the location of the gun was about a 20-minute walk from his house. *Id.*

Sergeant George Hill of the Willistown Township Police Department also testified. He recounted that on May 31, 2020, he responded to a domestic disturbance report at Daimion's home. According to Sergeant Hill, the issue was resolved without incident and Sergeant Hill left. *See id.* at 167. The sergeant stated that within the hour, he received a call from Daimion's daughter, Heather, reporting that McIntyre had taken a firearm from her

office. *See id.* at 168, 176. Heather told the sergeant that her father was on the phone with McIntyre, and he was directing Daimion to the location of the gun. *See id.* at 168. The sergeant returned to Daimion's house and, after speaking with Heather, went into the woods of the nearby park. He eventually found Daimion, who told him he had recovered the firearm. *See id.* at 169.

The Commonwealth also called Michelle Daimion and Heather Daimion to the stand, whose testimony gave a more detailed account of their involvement with the gun incident on May 31, 2020.

McIntyre's defense at trial was essentially that he was not guilty of possession of the firearm because he did not intend to possess or control the firearm, but rather intended to relinquish control of the gun. He also asserted he was justified in possessing the firearm.

McIntyre testified in his own defense. He explained he had lived with his uncle since he had been paroled, which had been approximately one and one-half years at the time of the incident on May 31, 2020. *See* N.T., 7/14/2022, at 56. On that day, he testified he found a gun in a drawer in his uncle's house. *See id.* at 61. He maintained he was scared and did not know what to do because his parole status prohibited him from residing in a house with a gun. *See id.* at 63. He also claimed he was scared the police, who he was aware Michelle was calling because of his behavior, would shoot him if they learned of the presence of the gun. *See id.* at 75-76, 105. McIntyre testified he contemplated calling the police or his parole officer about his discovery of the

gun, but ultimately decided he would remove the gun from the house. *See id.* at 64, 71, 76-77. He also reported that he did call his therapist, Olga Encarnacion. *See id*. at 76-77.

According to McIntyre, he took the firearm and went to the fire station near his uncle's house with the plan to give the firearm to a firefighter. *See id.* at 77. McIntyre claimed nobody was at the station. *See id.* at 77. As a result, he went into the woods and buried the weapon there. *See id.* at 80. He testified his intent was to direct the police or his uncle to the whereabouts of the gun. *See id.* at 78, 80, 82.

When McIntyre returned to his uncle's house after burying the gun, Sergeant Hill was there responding to the first call of the domestic disturbance. McIntyre did not tell Sergeant Hill he had taken and hidden the gun, instead agreeing with the sergeant that he would leave the residence. *See id.* at 82, 84. After he left, McIntyre called Michelle's phone and spoke with Michelle and then his uncle, who by this point, knew the firearm was missing. *See id.* at 85. McIntyre directed his uncle to the weapon. *See id.*

On cross-examination, McIntyre agreed with the prosecutor that he had, in fact, physically possessed the firearm on May 31, 2020. *See id.* at 88, 115. He acknowledged he possessed the gun in his uncle's house, while he walked down the street to the firehouse, and when he walked into the woods. *See id.* at 88-89; 104 (answering "Yes" to "[a]t all times when you picked [the gun] up to when you buried it, it was like physically in your hands?"). He was aware

he was not permitted to possess a firearm. *See id.* at 95, 115. McIntyre further agreed he buried the firearm in the woods and did so with the intent that nobody else could find the hidden weapon unless he directed them to it. *See id.* at 89, 104.

The defense also called Encarnacion to testify as a fact witness regarding the May 31, 2020, incident. Encarnacion recounted that on that day, McIntyre called her to tell her he had found a gun in his uncle's residence and was trying to dispose of the gun. *See id.* at 45-46. She explained McIntyre was agitated and fearful at the time, because of finding the gun, Covid and the George Floyd case. *See id.* at 45-46, 47-48. She testified she was aware McIntyre had taken the gun. She further stated she spoke to the police on May 31, but did not tell them that McIntyre had the gun because she believed McIntyre had already told the police he had taken the gun when she spoke with them. *See id.* at 52, 53-54.

The jury convicted McIntyre of person prohibited from possessing a firearm under Section 6105. Following a sentencing hearing on December 14, 2022, the court sentenced McIntyre to five to twenty years' incarceration. McIntyre filed a timely post-sentence motion, raising a sufficiency and a weight claim, as well as a prosecutorial misconduct claim. He then *sua sponte* filed a "supplemental memorandum of law in furtherance of post-sentence motion" on January 3, 2023, arguing for the first time that Section 6105 was

unconstitutional under **Bruen**. The trial court denied the post-sentence motion.

McIntyre filed a timely notice of appeal and complied with the court's order to file a Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion thoroughly addressing McIntyre's claims, including McIntyre's constitutional arguments. The court explained in detail why it had rejected McIntyre's claim that Section 6105 violated his federal constitutional rights pursuant to **Bruen**. It urged this Court to find McIntyre was not entitled to any relief on that claim or any of his other claims, and to affirm his judgment of sentence.[2] McIntyre now raises the following issues on appeal:

I. Whether, under the United States Supreme Court's decision in **Bruen** and the Third Circuit's decision in **Range**, [Section 6105] is unconstitutional both on its face and as applied to [McIntyre]?

II. Whether [McIntyre's] right to a meaningful opportunity to present a complete defense was violated by the trial court's denial of a justification instruction and by a series of the trial court's rulings at trial?

III. Whether the additional grounds raised on appeal, including the trial court's denial of [McIntyre's] pretrial motions, [McIntyre's] challenges to the sufficiency and weight of the evidence, the prosecutor's closing remarks, and the cumulative effect of the errors raised on appeal, warrant reversal and remand?

IV. Whether the evidence was insufficient to support [McIntyre's] conviction?

---

[2] We commend the Honorable Jeffrey R. Sommer for his comprehensive and well written Opinion filed pursuant to Pa.R.A.P. 1925(a) on March 28, 2023.

Appellant's Brief at 9 (suggested answers omitted).

In his first issue, McIntyre asserts Section 6105 is unconstitutional. Specifically, he argues Section 6105 is unconstitutional on its face under both the Second Amendment of the United States Constitution pursuant to **Bruen** and Article I, Section 21 of the Pennsylvania Constitution. He also alternatively alleges that Section 6105 is unconstitutional as applied to him. These claims do not warrant any relief.

As a threshold matter, the Commonwealth argues McIntyre has waived his claims that Section 6105 is unconstitutional under the Pennsylvania Constitution and as applied to him because he did not raise those claims before the trial court. We agree. **See** Pa.R.A.P. 302(a) (providing that issues not raised in the lower court are waived and cannot be raised for the first time on appeal); **Commonwealth v. Armolt**, 294 A.3d 364, 378 (Pa. 2023) (stating that, in general, constitutional challenges are subject to ordinary preservation rules).

McIntyre acknowledges he did not raise any constitutional challenge to Section 6105 until his supplemental post-sentence motion. In that motion, as noted above, McIntyre only argued that Section 6105 was violative of his federal constitutional rights under **Bruen**. McIntyre seems to concede he did not specifically raise a challenge to the constitutionality of Section 6105 under the Pennsylvania Constitution or as applied to him in his supplemental post-sentence motion. Instead, he argues in his reply brief, without making any

mention of the as-applied claim, that he "unartfully" raised the Pennsylvania Constitution issue by making a reference to Pennsylvania law as part of his constitutional argument at the hearing on his post-sentence motion. Appellant's Reply Brief at 6.

The most glaring problem with McIntyre's assertion in this regard is the absence of any notes of testimony from a post-sentence motion hearing in the electronic certified record sent to this Court. Of course, it is the appellant's burden to ensure the certified record sent to this Court contains that which is necessary for us to properly resolve the issues raised on appeal. **See Commonwealth v. Midgley**, 289 A.3d 1111, 1120 (Pa. Super. 2023).

Even had McIntyre ensured the transcript from the post-sentence motion hearing was part of the certified record sent to this Court, and there was merit to his claim that he sufficiently raised the state constitutional claim there, his claim regarding the Pennsylvania Constitution as well as his as-applied claim would still be waived. That is because McIntyre also failed to raise those claims in his Rule 1925(b) statement. Instead, his only claim in his statement regarding the constitutionality of Section 6105 read as follows:

> [McIntyre's] conviction under 18 P.S. § 6105 is violative under the United States Supreme Court's decision in **New York State Rifle & Pistol Ass'n, Inc. v. Bruen**, 597 U.S. __, 42 S. Ct. 2111 (2022).

Rule 1925 Statement of Errors Complained of on Appeal, 2/23/2023, at 1.

Accordingly, the trial court understandably only addressed the **Bruen** issue in its Rule 1925(a) opinion. It did not address the contentions that

- 10 -

Section 6105 violated our state constitution or was unconstitutional as applied to McIntyre, as those claims were clearly not raised in the 1925(b) statement. We agree, and therefore those claims are waived. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) (providing that any claims that are not raised in a Rule 1925(b) statement are waived).

McIntyre's remaining constitutional claim, then, is that Section 6105 violates the Second and Fourteenth Amendments under *Bruen*. Again, as McIntyre acknowledges, he raised this issue for the first time in a supplemental post-sentence motion. His only explanation as to why he did not raise the issue until then was that was when the issue was first "brought to trial counsel's attention." Appellant's Reply Brief at 6. He does not address Pa.R.Crim.P 720(B)(1)(b), which is the Rule governing the circumstances under which defendants are allowed to file supplemental post-sentence motions. That Rule provides:

> The defendant may file a supplemental post-sentence motion in the judge's discretion as long as the decision on the supplemental motion can be made in compliance with the time limits of paragraph (B)(3).

Pa.R.Crim.P. 720(B)(1)(b).

As the Rule makes clear, a defendant may only file a supplemental post-sentence motion "in the judge's discretion" and as long as the trial court can decide the motion within the time limits of the Rule. Here, McIntyre does not point to any place in the record where he sought, and was granted, permission by the trial court to file a supplemental post-sentence motion. There is no

- 11 -

separate petition in the record requesting such permission, nor does the supplemental motion itself make this request.

Despite this procedural lapse, we recognize that the trial court addressed McIntyre's **Bruen** issue in both its order denying the post-sentence motion as well as in its Rule 1925(a) opinion. Moreover, it is clear the supplemental post-sentence motion did not render the trial court unable to decide the post-sentence motions in compliance with Rule 720's time limits or otherwise divest the trial court of jurisdiction. As such, we proceed to the merits of McIntyre's **Bruen** claim.

McIntyre's constitutional challenge is a question of law for which our standard of review is *de novo* and our scope of review is plenary. **See Commonwealth v. Omar**, 981 A.2d 179, 185 (Pa. 2009). As the party challenging the constitutionality of Section 6105, McIntyre carries the high burden of demonstrating Section 6105 clearly, palpably and plainly violates the Second Amendment of the Constitution of the United States. **See id.**

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II.

Section 6105, which McIntyre contends is violative of the Second Amendment, is titled "Persons not to possess, use, manufacture, control, sell or transfer firearms." Subsection (a) of Section 6105 provides that a person who has been convicted of an offense enumerated in subsection (b) shall not

possess, use, control, sell, transfer, or manufacture a firearm in this Commonwealth. *See* 18 Pa. C.S.A. § 6105(a). Subsection (b) then enumerates 38 offenses applicable to subsection (a), including corrupt organizations, aggravated assault, burglary and robbery. *See* 18 Pa. C.S.A. § 6105(b).

As referenced above, McIntyre stipulated at trial he had previously been convicted of corrupt organizations, aggravated assault, burglary and robbery and that those convictions disqualified him from possessing a gun under Section 6105. He does not dispute either of those stipulations here. Rather, he essentially argues that by prohibiting convicted felons such as himself, or others convicted of a statutorily-enumerated offense, from possessing a firearm, Section 6105 violates the United States Constitution pursuant to *Bruen*.

*Bruen* did not, as McIntyre readily acknowledges, directly decide the identity issue created by the wording of the Second Amendment, i.e., who are "the people" who may lawfully possess a firearm under the Second Amendment. The *Bruen* Court made abundantly clear in its decision that the petitioners in that case were "ordinary, law-abiding adult citizens" who are undisputedly "part of 'the people' whom the Second Amendment protects." *Bruen*, 597 U.S. at 31-32. The question before the Court involved the proposed conduct of those law-abiding citizens. Specifically, the Court addressed whether New York's licensing application process, which required

- 13 -

applicants such as the ***Bruen*** petitioners to show proper cause to carry a concealed handgun in public, violated the Second and Fourteenth Amendment rights to bear arms for self-defense of these law-abiding citizens. The High Court held that it did, announcing that "New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their [Second Amendment] right to keep and bear arms" in public for self-defense. ***Id.*** at 71.

In reaching this holding, the Supreme Court clarified that in keeping with its decision in ***District of Columbia v. Heller***, 554 U.S. 570 (2008), the standard for evaluating whether a modern firearm regulation violates the Second Amendment involves two questions.

First, a reviewing court must ask whether the plain text of the Second Amendment covers the individual's proposed conduct so that the Constitution presumptively protects that conduct. ***See Bruen***, 597 U.S. at 17, 24.

If so, the second question is whether the government has justified the firearm regulation by demonstrating that it is consistent with this Nation's historical tradition of firearm regulation. ***See id.***

The Supreme Court clarified that, pursuant to ***Heller***, the standard for evaluating regulations in the Second Amendment context is rooted in the Second Amendment's text and in history; the standard does not include a step that applies a means-end scrutiny. ***See id.*** at 18-24.

McIntyre argues Section 6105 is unconstitutional under the standard announced in **Bruen**. In support, he relies almost exclusively on the Third Circuit's decision in **Range v. Attorney General United States of America**, 69 F.4th 96 (3d. Cir. 2023) (*en banc*),[3] though he clearly acknowledges that decision is not binding on this Court. The 5-4 **Range** decision involved an appellant, Bryan Range, who had been convicted of the misdemeanor of making a false statement to obtain food stamps under 62 Pa.C.S.A. § 481(a). As a result of that conviction and its potential length of punishment, Range was barred from owning a gun under 18 U.S.C. § 922(g)(1), which prohibits a person who has been convicted of a crime punishable by an imprisonment term exceeding one year from possessing a firearm. Range sought a declaration in the federal courts that Section 922(g)(1) violated the Second Amendment as applied to him. **See Range**, 69 F.4th at 99.

The **Range** Court relied on **Bruen** to conclude that Section 922(g) was unconstitutional as applied to Range. In doing so, the **Range** Court stated that, under **Bruen**, it had to first decide whether the text of the Second Amendment applied to convicted offenders such as Range and to his proposed

---

[3] Notably, in December 2024, following remand of this case back to this Court, the *en banc* Third Circuit issued its decision in **Range v. Attorney General United States**, 124 F.4th 218 (3d. Cir. 2024) (*en banc*) ("**Range II**"). In **Range II**, the Third Circuit revisited its earlier decision, following a remand from the United States Supreme Court with instructions to apply **Rahimi**. Even with its added analysis of **Rahimi**, the Third Circuit reached the same "narrow" holding. **Range II**, 124 F.4th at 232. For the reasons already discussed above, the **Range II** decision is similarly inapplicable to this case.

conduct. *See id.* at 101. The Court concluded that convicted offenders like Range were among "the people" with Second Amendment rights. *See id.* at 101-103. It specifically rejected the government's contention that only "law-abiding" citizens were protected by the Second Amendment. *See id.* It therefore concluded that Range and his proposed conduct were covered by the plain text of the Second Amendment and presumptively protected.

The *Range* Court then proceeded to the second question of the *Bruen* standard and, after evaluating the arguments offered by the government in that case, determined that the government had failed to persuade the Court that applying Section 922(g)(1) to Range on the basis of his false-statement misdemeanor was consistent with the Nation's historical tradition of firearm regulation. *See id.* at 103-106. Accordingly, the *Range* Court reached the "narrow" decision that Section 922(g)(1) violates the Second Amendment "only as applied to [Range] given his violation of 62 Pa.[C.S.A.] § 481(a)." *Id.* at 106.

McIntyre maintains that *Range*'s analysis of Section 922(g)(1) "applies almost identically to Section 6105," and this Court should likewise find that *Bruen* compels the conclusion that Section 6105 is unconstitutional. Appellant's Brief at 27. We decline to do so. In the first place, *Range* was an "as-applied" case, with the *Range* Court painstakingly pointing out that its holding specifically applied only to Range and his situation. Clearly, the instant case has far different facts from those in *Range*, including the fact that

McIntyre is a "repeat violent offender with a resulting Offense Gravity Score of 10." Trial Court Opinion, 3/28/2024, at 3. Moreover, as McIntyre acknowledges, we are not bound by federal circuit courts' decisions. *See Wenk v. State Farm Co.*, 228 A.3d 540, 550 n.9 (Pa. Super. 2020).[4] We are, however, bound by *Bruen* and we therefore look to that decision to decide whether, as McIntyre claims, Section 6105 is unconstitutional under its auspices.

---

[4] We have previously said:

> We acknowledge that: federal court decisions do not control the determinations of the Superior Court. Our law clearly states that, absent a United States Supreme Court pronouncement, the decisions of federal courts are not binding on Pennsylvania state courts, even when a federal question is involved .... [However, w]henever possible, Pennsylvania state courts follow the Third Circuit [Court of Appeals] so that litigants do not improperly "walk across the street" to achieve a different result in federal court than would be obtained in state court. *McDonald v. Whitewater Challengers, Inc.*, 116 A.3d 99, 106 n.13 (Pa. Super. 2015) (quoting *NASDAQ OMX PHLX, Inc. v. PennMont Secs.*, 52 A.3d 296, 303 (Pa. Super. 2012) (citations omitted)).

> Further: When confronted with a question heretofore unaddressed by the courts of this Commonwealth, we may turn to the courts of other jurisdictions. "Although we are not bound by those decisions," "we may use decisions from other jurisdictions for guidance to the degree we find them useful and not incompatible with Pennsylvania law." *Commonwealth v. Manivannan*, 186 A.3d 472, 483–484 (Pa. Super. 2018) (citing *Newell v. Mont. W., Inc.*, 154 A.3d 819, 823 and n.6 (Pa. Super. 2017) (citation and internal quotation marks omitted)).

*Wenk,* 228 A.3d at 550 n. 9.

We first look to the whole of the Court's decision in **Bruen** to see how it guides our inquiry regarding the first question in **Bruen**'s Second Amendment standard: whether McIntyre and others convicted of an offense under Section 6105(b), and their conduct of possessing a firearm despite that criminal history, is covered by the plain text of the Second Amendment. As emphasized above, **Bruen** did not directly address the question of whether prohibiting felons or other convicted offenders from possessing guns violates the Second Amendment. That is because the **Bruen** Court made clear its decision involved and applied only to "law-abiding" citizens. Its decision was clearly rooted in that premise.

The **Bruen** decision is literally peppered throughout the opinion with references to the "law-abiding" status of the petitioners and the Second Amendment rights of "law-abiding" citizens to bear arms for self-defense. **See, e.g., Bruen**, 597 U.S. at 9 (stating this Court has recognized the Second and Fourteenth Amendments protect the right of law-abiding citizens to possess handguns at home for self-defense); **Id.** at 15, 31 (reiterating that petitioners are law-abiding citizens and part of "the people" protected by the Second Amendment); **Id.** at 60 (stating that the historical limitations on the right to bear arms did not prevent law-abiding citizens with ordinary self-defense needs from carrying arms in public); **Id.** at 70 (stating American governments have generally not required law-abiding, responsible citizens from demonstrating a special need for self-protection). In addition, **Bruen**'s

holding explicitly applies to "law-abiding" citizens and finds the New York statute unconstitutional because it impinges on "law-abiding" citizens' Second Amendment right to keep and bear arms for self-defense. *See id.* at 71.

We agree with the trial court that the repetitive highlighting of the rights of "law-abiding" citizens does not buttress McIntyre's assertion that *Bruen* commands a conclusion that the Second Amendment protects the possession of firearms by those who, like McIntyre, have been convicted of several violent felonies. Instead, as aptly stated by the United States District Court in *United States v. Coleman*, the clear implication of *Bruen*'s repeated usage of the term "law-abiding" is that "the reach of *Bruen* ends at the feet of those individuals who are not law-abiding citizens." *Coleman*, 2023 WL 122401 at *2 (N.D. W.Va. 2023) (slip copy).

We find further support for this conclusion from the fact that the *Bruen* Court explicitly relied on *Heller* throughout its opinion and when clarifying the standard to be applied to Second Amendment challenges. In *Heller,* the United States Supreme Court conducted an extensive historical analysis and concluded that the Second Amendment confers an individual right on law-abiding citizens to keep and bear arms for self-defense, unconnected with service in the militia. *See Heller*, 554 U.S. at 635 (explaining that the Second Amendment protects the "rights of law-abiding, responsible citizens to use arms in defense of hearth and home"); *Bruen*, 597 U.S. at 8-9 (stating that in *Heller* and *McDonald v. Chicago*, 561 U.S. 742 (2010)(extending *Heller*

to individual states *via* the Fourteenth Amendment), the Court recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense).

Despite its holding, the **Heller** Court was very clear that an individual's Second Amendment rights are not unlimited and are subject to regulation. It explicitly cautioned that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons …, [which are] presumptively lawful regulatory measures." 554 U.S. at 626, 627 n.26. In other words, **Heller,** on which **Bruen** not only relied but reinforced, specifically validated the prohibition on the possession of firearms by felons as being consistent with the individual rights protected by the Second Amendment. As with **Bruen**, we are bound by **Heller**.

Based on all the above, we agree that **Bruen** does not stand for the principle that convicted violent offenders such as McIntyre are "the people" who have a right to possess arms under the Second Amendment. **Bruen** in no way said that felons are protected under the Second Amendment, nor can its decision, with its hyper focus on "law-abiding" citizens, be read as providing the necessary support for such a determination.

Instead, **Bruen** reinforced **Heller,** which unequivocally stated that its holding that individuals had a right to bear arms under the Second Amendment did not in any way call into doubt the government's ability to

prohibit felons from possessing firearms.[5] Therefore, under **Heller**, we find that the plain text of the Second Amendment does not cover McIntyre and his possession of a firearm as a convicted offender. This conclusion negates any need to examine **Bruen**'s second question, *i.e.* whether Section 6105's prohibition against convicted felons and certain other convicted offenders from possessing firearms is consistent with this Nation's history of firearm regulation.

As instructed by the Pennsylvania Supreme Court, we considered the impact of **Rahimi** on our above conclusion and we conclude **Rahimi** does not compel a different result.

In **Rahimi**, the United States Supreme Court considered a Second Amendment challenge to a federal statute, 18 U.S.C.A. § 922(g)(8), that forbids possession of a firearm by a person subject to a domestic violence order if the order includes a finding that the person "represents a credible threat to the physical safety" of the person's intimate partner. **Id.** at 684. There, Rahimi argued that § 922(g)(8) was unconstitutional on its face as applied to him. **Id.** at 689. The Supreme Court disagreed, holding that when

---

[5] Though not raised by McIntyre, we recognize the argument that the "law-abiding" language used in **Bruen**, as well as **Heller**'s assurance that its decision was in no way meant to disturb the constitutionality of prohibiting felons from possessing guns, which it identified as presumptively lawful, constitutes dicta. We note that **Bruen** used the law-abiding language in its holding and did nothing to walk back this very direct assurance in **Heller.** That said, the language in **Bruen** and **Heller**, at the very least, undoubtedly gives context to those decisions as well as clear guidance to the question we are tasked with answering in this appeal.

an individual has been found by a court to pose a credible threat to the physical safety of another, that individual may be temporarily disarmed consistent with the Second Amendment. *See Rahimi*, 602 U.S. at 690. Accordingly, the court concluded that Section 922(g)(8) was not unconstitutional as applied to Rahimi.

Similar to *Range*, as an "as-applied" case, we do not find *Rahimi* affects our decision, as the *Rahimi* Court pointed out its holding specifically and narrowly applies to "the facts of this case." *Id.* at 690; *see also id.* at 693 and 701.

However, as we reiterate that we remain bound by *Bruen*, we find the *Rahimi* Court's clarification of the *Bruen* methodology valuable going forward. A recent panel of this Court relevantly summarized some key takeaways from *Rahimi*; Judge Victor Stabile's exceptional analysis is worth repeating here:

> From the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others. The *Rahimi* Court cited surety laws, whereby a person suspected of future misbehavior, including misuse of firearms, was required to post a bond or face jailtime. Those who posted bonds would forfeit the bond in the event of future misbehavior. "Going armed" laws prohibited riding or going armed, with dangerous or unusual weapons, [to] terrify [] the good people of the land. Punishment included imprisonment and forfeiture of weaponry.
>
> Noteworthy here is the lesson the *Rahimi* Court drew from the surety and going armed laws. Taken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed. That is, § 922(g)(8)

was sufficiently analogous to the going armed and surety laws in both its "how" – restricting gun possession – and its "why" – because the subject posed a credible threat of violence to another.

\*\*\*

The Supreme Court's *Rahimi* opinion, particularly its "how" and "why" analysis with regard to "going armed" laws, provides an avenue for upholding felon firearms bans such as that of § 6105, at least temporarily. The common law "going armed" laws prohibited the use of dangerous weapons to terrify people and imposed forfeiture of weaponry as a punishment. . . . And § 6105 is strikingly similar to § 922(g)(8), at issue in *Rahimi*, in both how—prohibition of firearm possession—and why—Appellant, based on his criminal history, poses a threat of violence—it restricts Appellant's Second Amendment right. And this case, as distinct from both *Rahimi* and *Range*, involves a criminal conviction for a felony that involved the use of a firearm. Given the United States Supreme Court's treatment of the "going armed" laws in its *Rahimi* opinion, we can safely conclude that our nation does indeed have a history and tradition of disarming people like Appellant.

*Commonwealth v. Farmer*, __A.3d__, 2024 WL 5195377, at *3-4, *7 (Pa. Super. filed Dec. 23, 2024) (some citations, quotation marks, and emphasis omitted). While we do not reach *Bruen*'s history-and-tradition inquiry under the circumstances here, we do not find the above reasoning from *Rahimi* is inconsistent with our conclusion in this case.

In sum, we conclude McIntyre has not met his burden of clearly, palpably and plainly showing that Section 6105 is unconstitutional under *Bruen*. *Rahimi* does not compel a different result. McIntyre's constitutional claim, therefore, offers him no basis for relief.

Turning to the remainder of McIntyre's issues, we observe at the outset that the briefing on these issues generally fails to comply with our Rules of

Appellate Procedure. As discussed more fully below, McIntyre clumps distinct issues together under overly broad questions and headings and fails to adequately introduce, explain or analyze various claims in compliance with the Rules. *See* Pa.R.A.P. 2116(a) (providing that the statement of questions involved must "concisely state the issues to be resolved" and "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"); Pa.R.A.P. 2119(a) (providing that "the argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part … the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent"). The result is that we are constrained to find waiver in many instances. We elaborate in our following discussion of McIntyre's individual claims.

We find it judicious to address McIntyre's sufficiency of the evidence claim first, which he assigns as his fourth question in his statement of questions involved but argues under his third issue in his argument section. We do so as the central case relied on by McIntyre in his sufficiency claim is also repeatedly referenced in later claims. Moreover, by addressing his sufficiency claim first, we attempt to add some context to the incomplete background McIntyre provides in some of those later claims.

McIntyre claims the Commonwealth failed to present sufficient evidence to sustain the possession of a firearm conviction. In the first place, this

sufficiency issue is waived. McIntyre did not properly raise this issue in his Rule 1925(b) statement as he did not identify which elements of the offense he was asserting the Commonwealth did not prove. It is waived for that reason alone. **See Commonwealth v. Williams**, 959 A.2d 1252, 1257-1258 (Pa. Super. 2008) (stating that a sufficiency claim is waived if the Rule 1925 statement fails to articulate the specific elements of the crime for which the appellant is challenging as having been insufficiently proven, and regardless of whether the trial court addressed the issue). Even if not waived, we have little trouble finding that the Commonwealth presented sufficient evidence to sustain the possession conviction.

When reviewing a challenge to the sufficiency of the evidence, we must determine whether, when viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence presented at trial and all reasonable inferences derived from the evidence was sufficient to establish all of the elements of the offense beyond a reasonable doubt. **See Commonwealth v. Ramtahal**, 33 A.3d 602, 607 (Pa. 2011). The Commonwealth may sustain its burden entirely by circumstantial evidence. **See id.** Moreover, the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part or none of the evidence. **See id.**

To sustain McIntyre's conviction for person prohibited from possessing a firearm, the Commonwealth had to prove: (1) McIntyre possessed a firearm

and (2) that McIntyre had previously been convicted of one of 38 enumerated offenses which made him ineligible to possess that firearm. **See Commonwealth v. Miklos**, 159 A.3d 962, 967 (Pa. Super. 2017); 18 Pa. C.S.A. § 6105(b). Possession can be found by actual possession or constructive possession. **See Commonwealth v. Parrish**, 191 A.3d 31, 36 (Pa. Super. 2018). When there is no direct evidence the person was in physical possession of the firearm, the Commonwealth must prove the element of possession through what has been described as the "legal fiction" of constructive possession. **See id.** This Court has stated that a defendant has constructive possession of contraband if he has conscious dominion of it, that is, he has the "power to control the contraband and the intent to exercise that control." **Id.** (citation omitted). Constructive possession is "an inference arising from a set of facts that possession of the contraband was more likely than not[,]" **see Commonwealth v. Hopkins**, 67 A.3d 817, 820 (Pa. Super. 2013)(citation omitted) and may be established by the totality of the circumstances, **see Parrish**, 191 A.3d at 36.

Here, McIntyre only challenges the sufficiency of the possession prong. As the trial court found, however, McIntyre admitted at trial that he intentionally possessed the firearm when he picked it up, carried it for a substantial distance and then buried it. As such, there is no dispute that McIntyre had physical possession of the firearm. **See** 18 Pa.C.S.A. § 301(c) (stating "possession is an act, within the meaning of this section, if the

possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession").

McIntyre argues, however, that because the gun was ultimately not physically found on his person, the Commonwealth had to establish he constructively possessed the gun. He argues constructive possession requires a showing that he intended to exercise control of the gun and in this case, he did not have that intent because his intent was always to relinquish control of the gun. In support, he relies on **Commonwealth v. Heidler,** 741 A.2d 213 (Pa. Super. 1999). This claim is without merit.

In **Heidler**, Heidler handed his firearm, which he legally possessed, to his girlfriend on their way to picking up Heidler's son at school. The girlfriend placed the gun in her purse. When they arrived at the school, Heidler went into the school to retrieve his son while his girlfriend and her purse remained in the car. Despite these circumstances, Heidler was ultimately charged with and convicted of possessing a weapon on school property.

On appeal, this Court agreed with Heidler that there was insufficient evidence to establish he constructively possessed the firearm. The Court observed that when somebody else has equal access to the area where the firearm is found, the defendant cannot be said to have the power to control or the intent to control the firearm *per se*. **See Heidler**, 741 A.2d at 216. The Court found that, because the girlfriend had the gun in her purse, she was the

one who had access to it, and it therefore could not be said that Heidler had the power to control or the intent to control the gun. *See id.* Alternatively, the Court noted it was clear Heidler did not intend to exercise control over the gun once arriving on school property given that he relinquished control of the gun to his girlfriend before entering school property. *See id.*

In finding *Heidler* inapplicable to the facts of this case, the trial court explained:

> [T]he trial court did not err in finding [McIntyre's] reliance on the decision in *Commonwealth v. Heidler*, 741 A.2d 213 (Pa. Super. 1999), to be misplaced. In *Heidler,* the Superior Court concluded that the Commonwealth's evidence failed to demonstrate that [Heidler] had the power or intent to control a gun on school property that he handed to his girlfriend before they entered the property. [*See id.*] at 216. Rather, the Superior Court concluded that [Heidler] intended to relinquish control of the gun [before he was on school property] when he handed it to his girlfriend.

> Here, unlike in *Heidler,* no one other than the accused had equal access to or control of the firearm in this case. [McIntyre] did not relinquish the weapon to a friend or family member. Nor did he even leave it where he found it. Rather, he testified that he took the firearm from its location and carried it away to a location only known to him and hid it. As a result, he was the only person that had access to the weapon. He was the only one with the necessary power or intent to control the hidden weapon.

Trial Court Opinion, 3/28/2023, at 7. The court then noted:

> Finally, [McIntyre] took the stand and testified at trial. Thus, the jury, as fact-finders, could themselves judge the credibility of [McIntyre's] contention that he had no intention of possessing the weapon and intended to relinquish the same. It is not within [a] court's purview to substitute its credibility [determination] for that [made by] the jury.

*Id.*

As such, the trial court rejected McIntyre's sufficiency claim. We see no error in the court's determination that **Heidler,** with facts clearly distinguishable from those here, was not controlling and that the Commonwealth presented sufficient evidence for the jury to reasonably conclude that McIntyre unlawfully possessed the firearm. No relief is due.

We now turn to the second question McIntyre presents in his statement of the questions involved, where McIntyre tangles several distinct claims together. He argues in his statement of the question involved and his heading in the argument section that the trial court's denial of a justification instruction and "a series of the trial court's rulings" violated his due process rights to present a complete defense. Although McIntyre does not directly state what that defense was in his argument of this issue, as noted above, McIntyre's defense at trial was essentially that he did not intentionally possess the firearm because he intended to relinquish control of the firearm and was also justified in his possession of the firearm. These claims are either waived or without merit.

In the first place, McIntyre's statement of the question involved is overly broad and vague in violation of Pa.R.A.P. 2116(a). It is not until McIntyre's actual argument that he attempts to reveal "the series of rulings" he is challenging under the umbrella of his second question. There, he baldly asserts that the trial court's "rulings on [(1)] the justification instruction, [(2)] the possession instruction, [(3)] the Commonwealth's objections to the cross-

examination of Sergeant Hill, and [(4)] the Commonwealth's objections to the direct examination of Olga Encarnacion" all violated his due process rights. Appellant's Brief at 31.

As the Commonwealth argues, these are distinct issues with distinct legal principles and McIntyre's attempt to bundle them under the rubric of a single question in his statement of the question involved results in a failure to properly set forth the issues to be resolved. Moreover, as noted above, McIntyre did not even identify the last three rulings he was attempting to challenge in that question, and those three issues are waived for that reason as well. *See* Pa.R.A.P. 2116(a).

Even if not waived due to a deficient statement of questions involved, we agree with the Commonwealth that McIntyre's challenges to the last three rulings would be waived for lack of development. ***See Commonwealth v. Love***, 896 A.2d 1276, 1287 (Pa. Super. 2006) (stating that claims that are not sufficiently developed are waived). Broadly speaking, McIntyre mashes all of his allegations of error into a single argument, weaving the separate issues together, and supporting his arguments primarily with nothing more than conclusory assertions. *See* Pa.R.A.P. 2119(a) (providing that "the argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part … the particular point treated therein). We address the deficiencies with the argument concerning each of the three rulings individually.

As for McIntyre's claim regarding the court's possession instruction, he appears to assert the trial court erred by not granting his request to include the definition of "conscious dominion" in a constructive possession instruction. *See* Appellant's Brief at 16. McIntyre does cite general law on constructive possession in his argument section. *See* Appellant's Brief at 32 (*citing* **Heidler**, 741 A.2d at 216 (stating that a defendant has constructive possession of a firearm if he has conscious dominion of it, that is, both the power to control the firearm and the intent to exercise such control)). However, his entire analysis on that issue is that the trial court:

> conflated the *actus reas* with the *mens reas*. *i.e.* conflated voluntary possession as an act with the intent to take and retain possession (*i.e*. conscious dominion). The trial court was clearly wrong in denying [McIntyre] … a possession instruction including the language of "conscious dominion" under **Heidler.**

Appellant's Brief at 33.

McIntyre does not attempt to give context to the trial court's ruling. Nor does he attempt to address the trial court's discussion on why it found his reliance on **Heidler** to be misplaced or the trial court's explanation as to why it did not abuse its discretion by charging the jury on possession when it instructed them that in order to find a person unlawfully possessed a firearm it must find the person "must have [had] the intent to control and the power to control the firearm." Trial Court Opinion, 3/28/2024, at 7, 17. McIntyre's conclusory and undeveloped argument is waived. **See Love**, 896 A.2d at 1287.

As for McIntyre's claim that the trial court erred in its ruling on the objections raised during Sergeant Hill's testimony, McIntyre's argument states only this:

> The comments made by the Daimion family to Sergeant Hill goes to the very real danger of a violent altercation – which the family was trying to incite – that [McIntyre] intended to avoid. This goes to his intent, which is relevant to conscious dominion and justification.

Appellant's Brief at 34.

As this excerpt makes clear, McIntyre does not attempt to give context to this claim or even identify the comments to which he is referring. If we flip to McIntyre's statement of the case section of his brief, we see that McIntyre does generally note there that the trial court sustained the Commonwealth's objections when defense counsel sought to cross-examine Sergeant Hill about the Daimions' comments to McIntyre about McIntyre being a Muslim and hating cops. **See** Appellant's Brief at 16. It is possible these are the comments McIntyre is referring to in his argument section, but it is not this Court's responsibility to try to guess an appellant's argument or piece the argument together for him. **See Armolt**, 294 A.3d at 377 (stating that it is not an appellate court's duty to formulate an argument on behalf of an appellant). In any event, we also note that McIntyre cites no case law to support his already undeveloped argument. This claim is waived. **See Commonwealth v. Rahman**, 75 A.3d 497, 504 (Pa. Super. 2013) (stating that if an appellant

does not meaningfully discuss a claim with citation to relevant authority it is waived).

McIntyre's summary challenge to the trial court's ruling during Encarnacion's testimony suffers a similar fate. McIntyre generally asserts in his argument section that the comments made by McIntyre to Encarnacion fell within the state-of-mind exception to the hearsay rule. Again, McIntyre does not provide any context or identify the comments he now claims were admissible. And again, McIntyre does summarily reference in his statement of the case section that the trial court sustained the Commonwealth's objection when defense counsel asked Encarnacion "why" McIntyre was fearful when he called her on May 31, 2020. However, as discussed above, even if these were the comments McIntyre is now asserting were improperly ruled inadmissible by the court, it is not for this Court to try to piece together McIntyre's argument. ***See Armolt***, 294 A.3d at 377.

Further, while McIntyre does quote the state of mind exception found in Pa.R.E. 803(3), he cites to no other legal authority and does little to explain how Rule 803(3) applies to the unidentified comments he seems to claim were admissible under the state of mind exception. ***See Rahman***, 75 A.3d at 504. We agree with the Commonwealth that this claim, like the two just discussed, is also waived.[6]

---

[6] We recognize that in his reply brief, McIntyre responds, at least in part, to the Commonwealth's waiver argument. He asserts he combined the four

Lastly, we address the only ruling specifically challenged in McIntyre's question in his statement of the questions involved, namely the court's denial of his request to give a justification instruction. McIntyre's argument on this issue is also wanting, and we find it is also arguably waived for lack of development. **See Love**, 896 A.2d at 1287. To the extent we can review the claim presented, it is without merit.

Once again, McIntyre does not provide any context for this claim. Instead, he abruptly claims the trial court erred by not giving the justification instruction he sought, though he does not state what that proposed instruction was or where it can be found in the record, although he generally asserts it focused on his intent. **See** Pa.R.A.P. 2119(c) (requiring appellants to reference the place in the record where the charge, evidence or other matter referred to in the argument appears). He asserts the trial court should have given this instruction because it was "plausible and valid." Appellant's Brief at 33.[7]

---

rulings in one issue because they all related in some way to his ability to present a complete defense. He asserts that by arguing these issues are waived, the Commonwealth "value[s] repetition over efficiency and economy." Appellant's Reply Brief at 10. Of course, striving for efficiency and economy in one's brief is far different than producing a brief that fails to follow the Rules of Appellate Procedure. In an attempt to cure the deficiencies in the argument in his initial brief, McIntyre does divide his argument into four sections in his reply brief. However, and importantly, he does not change or add anything else of substance to those arguments.

[7] Although McIntyre does not point to the place in the record where his proposed instruction can be found, we are aware the trial court stated in its Rule 1925(a) opinion, without reference to the record, that McIntyre's proposed instruction included: "If you find the defendant believed it necessary

McIntyre does not offer any general law regarding the justification defense or when a justification instruction is warranted. Nor does he cogently explain how justification applies to his situation. Rather, he only asserts that he was entitled to a justification instruction pursuant to *Miklos* and *Commonwealth v. Lineman*, 219 A.3d 684 (Pa. Super. 2019). This claim offers no basis for relief.

First, as to the general law which McIntyre fails to provide, we note that under Pennsylvania's justification statute, "the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force." 18 Pa. C.S.A. § 505. Justification is an affirmative defense, and the defendant has the burden of providing an appropriate offer of proof in order to be entitled to a jury instruction on justification. *See Commonwealth v. Manera*, 827 A.2d 482, 485 n.7 (Pa. Super. 2003). Jury instructions on self-defense are not warranted where the evidence does not support a finding of self-defense. *See Commonwealth v. Washington*, 692 A.2d 1024, 1029 (Pa. 1997).

In *Miklos*, Miklos was charged with unlawfully possessing a firearm and asserted he acted with justification. He testified at trial that the victim pulled out a gun and threatened him. According to Miklos, he proceeded to wrestle

_____

to remove the fire[arm] from the premises … in order to avoid a further harm or evil to himself, this means that the defendant did not have the intent to unlawfully possess a firearm." Trial Court Opinion, 3/28/2023, at 18.

the victim for the gun, the gun discharged during the scuffle and the victim was shot. Miklos then picked up the gun, shot the victim again, and fled the scene with the gun. Miklos was convicted of person prohibited from possessing a firearm.

On appeal, Miklos argued he did not have the requisite intent to possess the firearm as he only possessed it in self-defense. This Court initially found that the defense of justification is available to persons charged with unlawfully possessing a firearm where the defendant claims he came into possession of a gun by disarming another during an altercation. *See Miklos*, 159 A.3d at 968-969. The Superior Court, however, agreed with the trial court that, while Miklos may have been justified in initially possessing the gun, his continued control of the gun after the altercation was not justified. *See id.* at 969.

Similarly, in *Lineman*, Lineman was convicted of person prohibited from possessing a firearm under Section 6105. On appeal, Lineman argued that he did not intend to possess the firearm because he only grabbed the firearm after his acquaintance pulled a gun on him and he wrestled the acquaintance for control of the gun. This Court held that pursuant to *Miklos*, a justification defense is available for a possessory offense "where a defendant plausibly argues he did not intentionally possess the firearm." *Lineman*, 219 A.3d at 688. As applied to Lineman, this Court essentially found that it did not discern any error in the trial court's conclusion that Lineman's possession of the gun

was not justified as the court, sitting as fact-finder, did not credit Lineman's testimony. *See id.* at 689.

Although not even acknowledged by McIntyre, the Pennsylvania Supreme Court reversed this Court's decision in *Lineman*. In a *per curiam* order, the High Court stated it was reversing the decision "based on *Commonwealth v. Torres*, 564 Pa. 219, 766 A.2d 342, 345 (Pa. 2001) (explaining that a fact-finder's mere disbelief of the defendant's testimony going forward with the evidence relative to a justification defense is 'no substitute for the proof the Commonwealth was required to provide to disprove the self-defense claim')." *Lineman*, 237 A.3d 963 (Pa. 2020) (Table) (*per curiam* order).

Notwithstanding this reversal, the trial court noted that McIntyre was arguing *Miklos* and *Lineman* warranted his proposed justification instruction here as those cases stood for the proposition that the justification defense is available for possessory offenses when the defendant plausibly argues he did not intentionally possess the firearm. *See* N.T., 7/14/2022, at 120; Appellant's Brief at 32. The court found there was simply no such plausible argument here. To that end, the court recounted that McIntyre admitted he intentionally took the gun, walked with it for some distance in his hand and then buried it, which the trial court found "no doubt" amounted to intentional possession. *Id.* at 121, 122. As such, the court ruled the justification instruction was not warranted. *See id.* at 122. We note that there was no

evidence whatsoever that McIntyre came into possession of the gun by disarming another during an altercation.

Instead, the trial court stated it would give the standard jury instruction to the jury on person prohibited from possessing a firearm, which included the instruction that "for a person to possess a firearm he must have the intent to control it and the power to control it." *Id*. at 122. The court did, in fact, give that instruction to the jury. *See id.* at 169.

Moreover, as to McIntyre's argument regarding *Miklos* and *Lineman*, the court also stated the following:

> As the *Miklos* case noted, many of the cases [dealing with] the issue of possession of a firearm and a justification defense involve the issues of self-defense or where there is a struggle over a weapon. These were not the issues or factual scenarios in this case.

Trial Court Opinion, 3/28/2023*,* at 18.

We find no abuse of discretion in the trial court's conclusion that *Miklos* and *Lineman* do not support a finding that McIntyre was entitled to a justification instruction, or in its conclusion that McIntyre failed to provide an offer of proof showing his proposed justification instruction was warranted under the facts here. McIntyre's summary and conclusory allegations to the contrary do not convince us otherwise.

McIntyre's third issue in his argument section does not match his statement of the questions involved. Rather, he phrases his third, and, at least in his argument section, his final, issue as: "Appellant's conviction should be

reversed and remanded for the other reasons raised in Appellant's Concise Statement of Errors." Appellant's Brief at 34. McIntyre then proceeds to raise four separate claims inside this issue.

First, he raises his challenge to the sufficiency of the evidence, which we addressed and rejected above. Next, he broadly asserts the trial court erred by failing to grant his motions for a new trial.

McIntyre first asserts the court erred by not granting his motion for a new trial based on his claim that the verdict was against the weight of the evidence. Appellate review of a weight claim ruled on by the trial court is not a reevaluation of the underlying question of whether the verdict was against the weight of the evidence. **See Commonwealth v. Champney**, 832 A.2d 403, 408 (Pa. 2003). Instead, our review of such a claim is limited to whether the trial court palpably abused its discretion in determining that the verdict was not against the weight of the evidence **See id.**

In considering McIntyre's weight claim, the trial court first noted that a new trial is only warranted in this context when the verdict is so contrary to the evidence as to shock one's sense of justice. **See** Trial Court Opinion, 3/28/2023, at 8 (*citing* **Commonwealth v. Smith**, 181 A.3d 1168, 1187 (Pa. Super. 2018). The court also observed that it was exclusively within the province of the jury to assess the credibility of witnesses and resolve contradictory testimony. **See** Trial Court Opinion, 3/28/2023, at 8 (*citing* **Commonwealth v. Delmonico**, 251 A.3d 829, 837 (Pa. Super. 2021).

Applying those principles to the instant case, the trial court explained why it had denied McIntyre's weight claim:

> In this case, [McIntyre] testified at trial. The jury was able to consider his testimony and the credibility thereof. He testified that he did not relinquish the weapon to anyone. The jury could have reasonably concluded, beyond a reasonable doubt, that [McIntyre] intended to exercise control over the handgun he hid. Therefore, following review of [McIntyre's] motion, the arguments of counsel, and review of the testimony at the trial before this court, which included [McIntyre's] own testimony, the court concludes that the jury's verdict was not so contrary to the evidence as to shock one's sense of justice.

Order, 1/24/2023, at 3.

We detect no abuse of discretion in this conclusion. The evidence presented by the Commonwealth more than adequately satisfied the elements of person prohibited from possessing a firearm, 18 Pa. C.S.A. § 6105(a)(1). In his attempt to establish the contrary conclusion, and that an abuse of discretion had been committed, McIntyre first baldly reasserts his contention, without further explanation, that the evidence did not establish his intent to control the gun. However, this undeveloped argument ignores that it was within the jury's province to evaluate the credibility and weight to be assigned to the Commonwealth witnesses and McIntyre's testimony, including his testimony that he possessed the gun but intended to relinquish control of the gun. **See Ramtahal**, 33 A.3d at 607 (the jury passes upon the weight and credibility of each witness's testimony and is free to believe all, part or none of that testimony).

McIntyre also asserts the verdict was against the weight of the evidence because it was inconsistent. This claim is waived for several reasons. First, McIntyre does not adequately explain his claim. *See Love*, 896 A.2d at 1287. He does cite testimony he seems to argue was contradictory, but he does not make any reference to where that testimony can be found in the record in violation of Pa.R.A.P. 2119(c), or demonstrate how that testimony establishes the jury's verdict was inconsistent. He also fails to cite any legal authority or provide any legal analysis to support this argument in violation of Pa.R.A.P. 2119(a). It is, once again, waived.

Based on all of the above, we conclude McIntyre is not entitled to any relief on his weight claim. He has not shown, and we do not find, that the trial court palpably abused its discretion by determining the verdict was not against the weight of the evidence and, in turn, denying McIntyre's motion for a new trial on that basis.

McIntyre argues "alternatively" that the trial court abused its discretion by denying his motion for a new trial based on prosecutorial misconduct. During closing, the prosecutor compared McIntyre hiding the firearm to a pirate hiding his treasure. McIntyre now claims, without citing any legal authority on prosecutorial misconduct, that because he is "a member of the Islam religion" and "grow[s] a beard as part of his Muslim identity," the prosecutor's pirate comments constituted misconduct because they "improperly targeted [McIntyre's] religion." Appellant's Brief at 38-39. We fail

to understand this contention, and cannot make the connection with the objected to comments and McIntyre's religion. As McIntyre concedes, however, counsel did not object to the prosecutor's comments at the time they were made during closing arguments. Therefore, we agree with the Commonwealth that the claim is waived for this reason alone. **See Commonwealth v. Davenport**, 342 A.2d 67, 75 n.4 (Pa. 1975).

In his final claim in his argument section, McIntyre asserts his "pre-trial motions should have been granted." Appellant's Brief at 39. This undeveloped claim is also waived.

McIntyre begins his argument of this issue with the statement that he is incorporating by reference the arguments made in his pre-trial motions. Next, he cites general law on due process rights at a preliminary hearing and the Commonwealth's burden to establish a *prima facie* case at that hearing. He then offers the following argument:

> It is submitted that no *prima facie* case was met under **Heidler**, thus the charges should have been dismissed *via* the habeas motion.
>
> It is further submitted that [McIntyre's] procedural due process rights were violated by the way the magisterial court conducted his hearing. As argued in [McIntyre's] *pro se* motion, this includes the use of video testimony, the refusal of his compulsory process rights to subpoena witnesses, the lack of notice of the hearings, the lack of notice of his prior counsel's withdrawal, and the lack of any discussion by the magisterial court on [McIntyre's] original procedural due process habeas motion, properly raised in the first instance with the magisterial district judge.

Appellant's Brief at 40.

Clearly, McIntyre's argument consists of nothing more than conclusory and woefully unexplained allegations of error. He does not engage in any meaningful legal analysis at all. *See Rahman*, 75 A.3d at 504. And while McIntyre does incorporate by reference the arguments contained in his pretrial motions, as discussed above, it is not for this Court to formulate and piece together an appellant's arguments for him. *See Armolt*, 294 A.3d at 377.

In any event, even if not waived, the Commonwealth points out that once a defendant is found guilty after trial, any alleged defects or errors at the preliminary hearing stage are rendered moot. *See Commonwealth v. Lee*, 662 A.2d 645, 650 (Pa. 1995) (providing that a defendant's "adjudication of guilt renders moot any allegation that the Commonwealth failed to establish a *prima facie* case" at the preliminary hearing); *Commonwealth v. Sanchez*, 82 A.3d 943, 985 (Pa. 2013) (stating that once a defendant has been found guilty after trial "any defect in the preliminary hearing is rendered immaterial").

In sum, we conclude that Section 6105's prohibition of persons convicted of one of the enumerated offenses in Section 6105(b) from possessing a firearm is not unconstitutional pursuant to *Bruen*. As such, McIntyre's conviction for possessing a firearm after being convicted of aggravated assault and other violent offenses in violation of Section 6105 need not be dismissed on constitutionality grounds. The remainder of

McIntyre's claims on appeal are either waived or meritless, and accordingly, also fail to offer him any basis for relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/10/2025